Jerry SMITH, Plaintiff-Appellant
Cross-Appellee,

v.

ATLAS OFF–SHORE BOAT SERVICE,
INC., Defendant-Appellee
Cross-Appellant.

No. 80–3573.

United States Court of Appeals,
Fifth Circuit.
Unit A

August 21, 1981.

Paul S. Minor, Paul T. Benton, David T. Cobb, Biloxi, Miss., for plaintiff-appellant cross-appellee.

Bryan, Nelson, Allen, Schroder & Backstrom, Vincent J. Castigliola, Jr., Pascagoula, Miss., for defendant-appellee cross-appellant.

Before RUBIN, RANDALL and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

For the first time we consider the question: does a seaman whose at-will employment is terminated because he filed suit against his employer under the Jones Act, 46 U.S.C. § 688, have an action in admiralty for wrongful discharge? Concluding that an employer may not, with impunity, discharge a seaman in sheer retaliation for the seaman's filing of a personal injury claim, we hold that the victim of this vengeance is entitled to maintain an action under the general maritime law to recover compensatory damages.

## I.

Jerry Smith, a seaman employed by Atlas Off-Shore Boat Service, Inc., suffered an ankle injury while working aboard the M/V TROJAN, a vessel engaged in servicing offshore oil rigs. Smith was employed for two-week shifts followed by two weeks of leave time after which he would be called back to work by Atlas's port captain. His injury occurred at the end of a two-week work shift. Six weeks later, although Smith was still suffering some symptoms, he asked his physician to declare him fit for duty so that he could return to work, and the physician did so.

Smith returned to work for Atlas on another vessel and worked a full two-week shift. During his subsequent leave, his attorney notified Atlas that Smith intended to file a personal injury claim. At the end of Smith's leave, the Atlas port captain informed him that, unless he abandoned his personal injury claim, he could not return to work for Atlas. When Smith refused to drop the claim, the port captain terminated his employment.

Thereafter, Smith filed suit against Atlas alleging liability for negligence under the Jones Act and for retaliatory discharge, a claim presumably based on general maritime law. The suit was tried to the court. The judge awarded Smith $2,995, $1,495 for lost wages from the date of his injury to the date he returned to work, plus $1,500, as compensation for his pain and suffering. Determining that Smith had been intentionally and wrongfully discharged by Atlas because of his proposed personal injury suit, the judge awarded him $1,000 in punitive damages, thereby implicitly holding that an action for retaliatory discharge is cognizable in admiralty.

Smith appeals from that judgment, contending that the district court erred by failing to award him lost wages until the date of trial and future lost wages due for alleged permanent partial disability. He also contends that the awards for pain and suffering and punitive damages are inadequate.

 Defending the amount of the damage award, Atlas contends on cross-appeal that the award of punitive damages for Smith's discharge must be reversed because there is no maritime cause of action for wrongful discharge,[1] and, in the alterna-

1. Smith contends that Atlas cannot, on cross-appeal, challenge the existence of a maritime cause of action for wrongful termination of the seaman's at-will employment contract both because the notice of cross-appeal failed to designate the original judgment in which the claim was recognized by the district court as the "judgment ... appealed from," Fed.R.App.P. 3(c), and because the defense of failure to state a claim upon which relief can be granted was waived by the employer's failure to raise it in the trial court. We find neither argument persuasive.

Both Smith's notice of appeal and Atlas's notice of cross-appeal designated as the judgment or order appealed from the district court's order sustaining in part Smith's motion for reconsideration of the original judgment. That supplemental order merely added an amount for pain and suffering to the damages awarded in the original judgment. It is clear, however, from the notices of appeal and the briefs filed by both parties that both Smith and Atlas sought review of the original judgment as amended by the supplemental order. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1379 (10th Cir. 1979) ("question is whether the notice of appeal and subsequent appellate proceedings support the inference that at the time of filing the notice, [cross] appellant sought to appeal the unspecified order"). In light of the purpose underlying the notice of appeal requirement and the general view that decisions on the merits should not be avoided on the basis of mere procedural technicalities, *Foman v. Davis*, 371 U.S. at 181–82, 83 S.Ct. at 230, 9 L.Ed.2d at 225, we refuse to characterize the Atlas cross-appeal notice as limiting its request for review to the trial court's supplemental order. *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1390 n.15 (5th Cir. 1979). Both parties briefed the issue, although they did so in no great detail. *Id.* Relying on his notice of appeal that designated the same supplemental order designated by the notice of cross-appeal, Smith asks this court to review each part of the trial court's judgment as amended by the supplemental order. Therefore, Smith has demonstrated no prejudice that would accrue to him if this court reviews the issue of the validity of the wrongful discharge claim. *Id.* We reject Smith's attempt to prevent review of the issue based on the content of the notice of cross-appeal. *But see Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252 (3d Cir. 1977).

tive, that the amount of the punitive damages award is not inadequate. We deal first with the principal issue involved in this case, the viability in admiralty of a cause of action for retaliatory discharge.

## II.

◼ In the absence of a contractual provision specifying a definite term or voyage during which a seaman will be employed, the seaman's employment is "terminable at will by either party." *Findley v. Red Top Super Markets, Inc.,* 188 F.2d 834, 837 n.1 (5th Cir.), *cert. denied,* 342 U.S. 870, 72 S.Ct. 112, 96 L.Ed. 654 (1951). Although a seaman who signs on for a voyage or for a specific term of employment is afforded some protection upon discharge,[2] no such protection is available to the seaman whose employment is not for a term but continues only at his employer's will. Finding no maritime jurisprudence addressing the issue whether a seaman whose at-will employment contract is terminated because he brings a personal injury action against his employer may maintain an action for wrongful discharge, we seek guidance in the nonmaritime common law dealing with termination of the at-will employment relationship.

◼ At common law, an employer may discharge his at-will employee "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong."[3] This unbridled freedom has been relied on to disallow a cause of action

---

As to Smith's second contention, even assuming that the defense of failure to state a claim cannot be asserted for the first time on appeal, *see Brule v. Southworth,* 611 F.2d 406, 409 (1st Cir. 1979); *Black, Sivalls & Bryson, Inc. v. Shondell,* 174 F.2d 587, 590–91 (8th Cir. 1949); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1392, at 862 (1969), Atlas is not barred from urging the nonexistence of the wrongful discharge cause of action. Pursuant to Rule 12(h)(2), Fed.R.Civ.P., the Rule 12(b)(6), Fed.R.Civ.P., motion can be made at trial on the merits. We think that, both in defense counsel's opening remarks to the trial judge and in the defendant's proposed findings of fact and conclusions of law filed in the district court, Atlas sufficiently alerted the trial court to its contention that there is no claim for wrongful discharge in an employment at-will contract. Although Atlas did not specifically argue the nonexistence of the claim *in admiralty,* the employer adequately raised the issue to preserve it for appellate review. Thus, we conclude that the issue is squarely before us and ripe for decision in this case.

2. "A seaman who has been wrongfully discharged may bring suit for the recovery of wages which he would have earned had the shipping contract been fulfilled." 1 M. Norris, The Law of Seamen § 482, at 561 (3d ed. 1970). *See Gilbert v. American Eagle Tanker Corp.,* 375 F.Supp. 678 (S.D.N.Y.1974), *aff'd mem.,* 535 F.2d 1241 (2d Cir. 1975). *See also* 46 U.S.C. § 594 (seaman "who has signed an agreement" and is discharged without justification before commencement of voyage or before one month's wages earned, is entitled to one month's wages as compensation); *Bunn v. Global Marine, Inc.,* 428 F.2d 40, 45 (5th Cir. 1970) (46 U.S.C. § 594 is designed to give seamen simple, summary method to establish damages for breach of employment contract);

Annot., Liability to Improperly Discharged Seaman Under 46 USCS § 594, 41 A.L.R.Fed. 811 (1979).

3. Blades, Employment At Will Vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power, 67 Colum.L.Rev. 1404, 1405 (1967) [hereinafter cited as Blades], *quoting Payne v. Western & A.R.R.,* 81 Tenn. 507, 519–20 (1884), *overruled on other grounds, Hutton v. Watters,* 132 Tenn. 527, 179 S.W. 134 (1915). *See* Annot., Employee's Arbitrary Dismissal As Breach of Employment Contract Terminable At Will, 62 A.L.R.3d 271 (1975). This rule was not inherited from the English common law, but originated in this country. Blackburn, Restricted Employer Discharge Rights: A Changing Concept of Employment At Will, 17 Am.Bus. L.J. 467, 468 n.1 (1980) [hereinafter cited as Blackburn]; Summers, Individual Protection Against Unjust Dismissal: Time For a Statute, 62 Va.L.Rev. 481, 485 (1976) [hereinafter cited as Summers]; Comment, Employment At Will and the Law of Contracts, 23 Buffalo L.Rev. 211, 215–216 (1973).

It can be traced to an 1877 American treatise on master-servant relations, H. G. Wood, Law of Master and Servant § 134, at 272 (1877). *See* Blackburn at 468 n.1; Summers at 485; Note, Implied Contract Rights to Job Security, 26 Stan.L.Rev. 335, 341 (1974).

"[F]ew legal principles ... seem to be better settled than the broad generality that ... an employment at will ... may be terminated at any time by either party for any reason or for no reason at all," Annot., Employee's Arbitrary Dismissal As Breach of Employment Contract Terminable At Will, 62 A.L.R.3d 271, 271. *See, e. g., Davis v. Williams,* 617 F.2d 1100, 1103 (5th Cir.) (in private employment, the employee can be discharged for almost any reason or for no reason at all), *cert. denied,* 449 U.S. 937,

based on discharge because of the employee's maintenance of a lawsuit against the employer, *Buysse v. Paine, Webber, Jackson & Curtis, Inc.*, 623 F.2d 1244 (8th Cir. 1980), as well as termination due to the employee's filing of a workman's compensation claim,[4] *Green v. Amerada-Hess Corp.*, 612 F.2d 212 (5th Cir.) (applying Mississippi law), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).

This employer latitude is said to be reinforced by the principle of mutuality of obligations: "if the employee is free to quit at any time, then the employer must be free to dismiss at any time." Summers, *supra* note 3, at 484–85.[5] The mutuality of obligations

rationale has both symmetry and logical appeal. It has, however, lost its once almost universal force.[6] Its application to the employment relationship has been criticized by commentators who claim that it is based on the false premise that the situation of the employer and employee in today's society is equivalent.[7]

A few courts, supported by the almost unanimous view of the commentators,[8] have refused to adhere to the traditional rule, finding little to recommend its continued application in instances in which the employer's conduct undermines an important public policy.[9] Although the supporting policy has, in the majority of these cases,

101 S.Ct. 336, 66 L.Ed.2d 160 (1980); *Hyde v. Land-of-Sky Regional Council*, 572 F.2d 988, 992 (4th Cir. 1978) (under North Carolina law, if the employee fails to establish that the employment contract was for a definite term, the employment is terminable at the will of either party).

4. *See, e. g., Loucks v. Star City Glass Co.*, 551 F.2d 745 (7th Cir. 1977) (Illinois law does not recognize a cause of action for discharge due to filing a workman's compensation claim); *Martin v. Tapley*, 360 So.2d 708 (Ala.1978); *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss.1981); *Dockery v. Lampart Table Co.*, 36 N.C.App. 293, 244 S.E.2d 272 (1978).

5. *See also* Blackburn, *supra* note 3, at 468–69 (the rule presumably offers the employee protection against harsh and changing employment conditions by allowing him to terminate the employment); Blades, *supra* note 3, at 1419.

6. Modern commentators in the field of contract law have argued that the concept of mutuality of obligations should be abandoned. *See* 1A A. Corbin, Contracts § 152 (1963); J. Calamari & J. Perillo, Contracts § 67, at 131 (1970); G. Grismore, Law of Contracts § 68, at 116 (rev. ed. 1965); Restatement (Second) of Contracts § 81 (Tent. Draft No. 2, 1967). *See also* Comment, Employment At Will and the Law of Contracts, 23 Buffalo Law Review 211, 219 & n.47 (1973).

7. "The situation of the employer differs drastically from that of the employee. There is nothing more than the appeal of symmetry and a harkening back to hollow notions of mutuality to uphold any suggestion that the rights of employers must correspond to the rights of employees." Blades, *supra* note 3, at 1426 (footnote omitted). *See* Summers, *supra* note 3, at 491 (mutuality in this context "is a spuri-

ous concept, neither required as a legal principle nor acceptable as a social principle").

8. *See* Blackburn, *supra* note 3 (cause of action for wrongful discharge should be recognized; contract theory is preferable to tort because contractual waivers of restrictions on discharge can be read out of the contract as unconscionable); Blades, *supra* note 3, at 1421–27 (drawing an analogy to the torts of abuse of process and interference by a third party with the employment relationship and suggesting an action in tort for abusive discharge); Note, A Common Law Action For the Abusively Discharged Employee, 26 Hastings L.J. 1435, 1454–56 (1975) (the tort theory is preferable to a contract action because it permits the court to ignore contractual waivers of restrictions on discharge); Note, Implied Contract Rights to Job Security, 26 Stan.L.Rev. 335 (1974) (recommending the recognition of implied contractual terms, based on the circumstances of employment, to protect against abusive discharge). Other commentators have advocated statutory protection for the at-will employee, having despaired of any judicial reform. *See* Summers, *supra* note 3, at 521 (although legal theories rooted in tort and contracts law are available, the courts have demonstrated a lack of willingness "to break through their self-created crust of legal doctrine[;]" thus, "any realistic hope for increased legal protection of employees *must look for fulfillment to legislation*").

9. *See, e. g., Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3d Cir. 1979) (finding a public policy embodied in Pennsylvania's anti-polygraph statute making the employer's discharge of the employee because of the latter's refusal to submit to a polygraph exam, actionable in tort); *Petermann v. International Bhd. of Teamsters Local 396*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (discharge of employee for refusing to give perjured testimony before

been grounded in statute or jurisprudence,[10] at least one court has ·recognized a public policy evolved solely from contemporary social and economic developments.[11] Most of the cases recognizing a cause of action based on a discharge that offends public policy have grounded that action in tort,[12] while a few decisions have relied on an implied contract theory of recovery.[13] Whether grounded in tort or contract, the cause of action is based on the notion that the employer's conduct in discharging the employee constitutes an abuse of the employer's absolute right to terminate the employment relationship when the employer utilizes that right to contravene an established public policy.

## III.

We find the reasoning of these cases persuasive. The employer's discharge of the at-will seaman-employee, while it is in essence a lawful act, should not be used as a means of effectuating a "purpose ulterior to that for which the right was designed." Blades, *supra* note 3, at 1424. The employer should not be permitted to use his absolute discharge right to retaliate against a seaman for seeking to recover what is due him or to intimidate the seaman from seeking legal redress. The right to discharge at will should not be allowed to bar the courthouse door. Nor does the struggle affect only the employer and the seaman. To

legislative committee); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977) (recognizing public policy exception to the at will employment rule); *Trombetta v. Detroit, T. & I.R.R.*, 81 Mich.App. 489, 265 N.W.2d 385 (1978) (discharge of employee for refusing to alter state-required pollution control reports); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (employer's discharge of employee for responding to notice of jury service violates clear mandate of public policy); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (same); *Harless v. First Nat'l Bank*, 246 S.E.2d 270 (W.Va.1978) (firing of bank employee who had notified his superiors of the bank's consumer credit protection law violations gave rise to successful tort claim). Several cases have recognized a cause of action for discharge due to filing a workman's compensation claim. *See, e. g., Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979); *Leach v. Lauhoff Grain Co.*, 51 Ill.App.3d 1022, 9 Ill.Dec. 634, 366 N.E.2d 1145 (1977); *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Sventko v. Kroger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (1978) (en banc). *But see Percival v. General Motors Corp.*, 539 F.2d 1126 (8th Cir. 1976) (rejecting public policy exception); *Scroghan v. Kraftco Corp.*, 551 S.W.2d 811 (Ky.App.1977) (employee discharged after informing employer of his intention to attend night law school; *held*: no public policy interest in education and employee's attendance of night school is a private concern); *Campbell v. Ford Indus., Inc.*, 274 Or. 243, 546 P.2d 141 (1976) (employee-stockholder of corporation was discharged after investigating management's alleged corporate misdealings; *held*: no public policy was contravened by firing employee because stockholder's interest is proprietary and private); Blackburn, *supra* note 3, at 479–80. *See generally* Blades, *supra* note 3, at 1409; Summers,

*supra* note 3, at 487; Note, Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only in Good Faith, 93 Harv.L.Rev. 1816, 1822–24 (1980) [hereinafter cited as *Protecting Employees*]; Comment, Protecting the Private Sector At Will Employee Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy, 1977 Wis.L.Rev. 777, 786–800 [hereinafter cited as *Whistle*].

**10.** *See* cases cited in *Protecting Employees, supra* note 9, at 1822 n.38. *See also Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979); *Harless v. First Nat'l Bank*, 246 S.E.2d 270 (W.Va.1978).

**11.** *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974). *See* Note, A Remedy for Malicious Discharge of the At-Will Employee: *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), 7 Conn.L.Rev. 758 (1975). *See also* Peck, Unjust Discharges From Employment: A Necessary Change in the Law, 40 Ohio S.L.J. 1, 44–46 (1979); *Protecting Employees, supra* note 9, at 1822–23; *Whistle, supra* note 9, at 793–800.

**12.** *See, e. g., Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975); *Harless v. First Nat'l Bank*, 246 S.E.2d 270 (W.Va.1978).

**13.** *See Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974). *See generally Protecting Employees, supra* note 9, at 1821; *Whistle, supra* note 9, at 783.

permit the seaman's discharge because he resorts to the courts may result in casting the burden of the employer's reprisal in part on the public in the form of unemployment compensation or social security for the worker or his family.

The recognition of a cause of action in admiralty providing the seaman with relief from a discharge caused by his filing of a claim against the employer is particularly appropriate in light of the admiralty court's protective attitude towards the seaman.[14] The judiciary's leading role in fashioning controlling rules of maritime law[15] and in reshaping old doctrine to meet changing conditions[16] makes the admiralty court peculiarly sensitive to the inequities inherent in the traditional rule. Moreover, this type of cause of action is not without federal precedent.[17]

■ The maritime employer may discharge the seaman for good cause,[18] for no cause, or even, in most circumstances, for a morally reprehensible cause. We conclude, however, that a discharge in retaliation for the seaman's exercise of his legal right to file a personal injury action against the employer constitutes a maritime tort.

■ The commentators suggest that judicial refusal to ameliorate the common law rule is based in part on the difficult factual questions and issues of proof inherent in the claim for retaliatory discharge.[19] We, therefore, set forth the precepts that guide their resolution. In order to prevail on the retaliatory discharge claim, the seaman must affirmatively establish that the employer's decision was motivated in substantial part[20] by the knowledge that the seaman either intends to file, or has already filed, a personal injury action against the

**14.** See, e. g., U. S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 355, 91 S.Ct. 409, 411, 27 L.Ed.2d 456, 461 (1971); Isbrandtsen Co. v. Johnson, 343 U.S. 779, 782–83, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294, 1298 (1952); Garrett v. Moore-McCormack Co., 317 U.S. 239, 246, 63 S.Ct. 246, 251, 87 L.Ed. 239, 244 (1942). See also International Paint Co. v. M/V Mission Viking, 637 F.2d 382, 385 (5th Cir. 1981); Charpentier v. Fluor Ocean Servs., Inc., 613 F.2d 81, 84 (5th Cir. 1980); Wink v. Rowan Drilling Co., 611 F.2d 98, 100 (5th Cir.), cert. denied, 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980); Reyes v. Vantage S.S. Co., 609 F.2d 140, 142 (5th Cir. 1980).

**15.** Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 259, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521, 526 (1979); United States v. Reliable Transfer Co., 421 U.S. 397, 409, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251, 262 (1975); Fitzgerald v. United States Lines Co., 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720, 724 (1963).

**16.** See e. g., Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (recognizing wrongful death action under general maritime law); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (extending seaman's unseaworthiness action to a maritime worker who is doing a seaman's work and incurring seaman's hazards).

**17.** See, e. g., Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) (employee discharged because he filed claim under Fair

Labor Standards Act provided cause of action); Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a) (retaliation against employee for opposing employer's unlawful discrimination in employment under Title VII is actionable under the Act); Reeves v. ITT Corp., 616 F.2d 1342 (5th Cir. 1980) (FLSA retaliatory discharge case), cert. denied, 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). Cf. American Export Lines, Inc. v. Alvez, 446 U.S. 274, 284 n.11, 100 S.Ct. 1673, 1679 n.11, 64 L.Ed.2d 284, 293 n.11 (1980) (in holding that the general maritime law authorizes wife of a harbor worker injured nonfatally aboard a vessel in state territorial waters to maintain an action for damages for loss of her husband's society, the court relied, in part, on fact that forty-two states allow recovery by a wife for loss of consortium due to personal injury of her spouse). See generally Summers, supra note 3, at 491–98.

**18.** The discharge of a seaman who is not fit for duty, whether or not his disability results from the employer's negligence, would not, of course, be wrongful.

**19.** See Blades, supra note 3, at 1427–31; Summers, supra note 3, at 491; Protecting Employees, supra note 9, at 1842.

**20.** Cf. Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 483 (1977) (motivating factor test in first amendment case dealing with discharge for exercise of free speech); Hastings v. Bonner, 578 F.2d 136, 141 (5th Cir. 1978) (same).

employer.[21] The employer may, on the other hand, defeat the seaman's action by demonstrating that the personal injury action was not a substantial motivating factor for the discharge.

The claim for retaliatory discharge may be joined with the seaman's personal injury action under the Jones Act and, like the general maritime law cause of action for unseaworthiness, may be tried to the jury along with the Jones Act claim even in the absence of diversity.[22]

The employer's retaliatory discharge is properly characterized as an intentional tort, entitling the seaman to compensatory damages caused by the abusive firing, including the seaman's expenses of finding new employment, lost earnings while the seaman seeks another position, and lost future earnings if the seaman's new job provides less remuneration than that earned while the seaman was in the employ of the defendant.[23] In addition to these economic losses, the discharged seaman may be entitled to recover compensatory damages for mental anguish that he may suffer as a result of the wrongful discharge.

In determining the amount of compensatory damages to which the discharged seaman is entitled, the seaman's duty to mitigate his losses by seeking new employment is also a consideration. Moreover, the seaman is not entitled to double recovery for any element of damages that is compensable both under his personal injury claim and the retaliatory discharge claim. For example, wages lost between the time of injury and the date the seaman undertakes new employment that are recoverable by the seaman on his Jones Act claim may not also be recovered on the claim for retaliatory discharge.

The employer should not, however, be further penalized by the inclusion of punitive damages in the seaman's list of items recoverable. The additional deterrent effect such damages might produce, see *Protecting Employees, supra* note 9, at 1843, is insufficient to justify their imposition. In striking the balance between the employer's right to have a free hand in the running of his business and the seaman's interest in the unencumbered exercise of his legal rights, we conclude that, while the balance weighs in the seaman's favor on the question of the recognition of the claim for retaliatory discharge, the scales tilt against the imposition of punitive damages. *But see Dyer v. Merry Shipping Co.,* 650 F.2d 622 (5th Cir. 1981) (allowing punitive damages under the general maritime law cause of action for unseaworthiness, but expressly reserving the question whether such damages are recoverable under the Jones Act).

Thus, the seaman who is subjected to discharge in retaliation for filing a Jones Act claim is entitled to maintain an action, sounding in maritime tort, for abusive discharge if he is able to satisfy the burden of establishing that his personal injury claim was a substantial motivating factor for the discharge. The damages recoverable under that cause of action are those compensatory elements of damage for which the seaman is not compensated on his personal injury claim.

## IV.

Smith sufficiently substantiated his claim of discharge in retaliation for his prospective filing of a personal injury claim under the Jones Act. The district court found that Atlas fired Smith upon his refusal to abandon his personal injury claim.

---

21. Of course, proximity in time of the discharge and the employer's initial awareness of the seaman's personal injury action is one element of proof of the employer's motivation.

22. *Cf. Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) (unseaworthiness claim, if joined with Jones Act claim, may be tried by jury even in absence of diversity); *Cruz v. Hendy Internat'l Co.,* 638 F.2d 719, 723 (5th Cir. 1981) (same).

23. *See* Blackburn, *supra* note 3, at 487; Blades, *supra* note 3, at 1413; *Protecting Employees, supra* note 9, at 1843. The award for such loss must be based on the likely duration of the terminated employment.

That finding is not clearly erroneous.[24] Moreover, Smith was apparently fit for seaman's duty as of the date he returned to work for Atlas after the injury. Although the district court's findings are not explicit on this point, when read in the context of the entire record, it is clear to us that the trial judge believed Smith to have suffered no permanent, debilitating after-effects from the ankle sprain.[25] That finding is also not clearly erroneous. Smith's complete recovery is significant, not only in regard to the satisfaction of his burden of proof on the abusive discharge claim, but also with respect to his Jones Act claim for future lost wages. Because he was apparently not disabled to perform seaman's duties, Smith is not entitled to recover, on his Jones Act claim, lost wages after his return to work subsequent to his injury. Thus, the district court's award of lost wages is affirmed.[26] The award of $1,500 for pain and suffering, considering the nature of the injury, was not clearly inadequate and is also affirmed.[27] Thus, Smith received adequate compensation for his Jones Act claim.

On the claim for the wrongful discharge, the district court awarded only punitive damages. Because we consider such damages to be inappropriate for the retaliatory discharge cause of action we here recognize, that award must be reversed. However, there are other elements of compensatory damages, outlined above, recoverable under the abusive discharge cause of action to which Smith might be entitled if he can establish that he actually incurred those pecuniary and nonpecuniary losses. Thus, upon remand, the parties must be provided another opportunity to present evidence regarding the actual losses suffered by Smith due to the discharge. The district court should, in determining the appropriate amount of compensatory relief, consider whether Smith indeed could have obtained new employment as a seaman, or some other type of employment, the remuneration from which would have reduced his loss of wages. The seaman's recovery should be diminished in the amount the district court determines that Smith could have mitigated his damages due to the discharge.

V.

The cause of action we recognize is limited. It subjects the employer to liability for compensatory damages if, and only if, the seaman can establish that a substantial motivating factor in the employer's decision to discharge him was the seaman's personal injury action arising out of the employment relation. It does not prevent the employer from discharging the seaman for any or no reason, unless that reason is the seaman's filing of a personal injury claim. Moreover, it does not permit the seaman to recover punitive damages or compensatory damages to which he is already entitled under the personal injury claim.

24. Atlas apparently admitted in a hearing held by the Louisiana Office of Employment Security that Smith was fired due to his personal injury claim. The decision of the appeals referee of the appeals tribunal of the Louisiana Office of Employment Security, a copy of which is in the record, states that "[t]here is no evidence of misconduct involved in the discharge as the employer no longer desired the claimant to work for [it] due to a civil suit involving on the job injury."

25. Although the examining physician testified, under questioning by the court, that Smith suffered a 2 or 3% disability to perform seaman's work, the testimony of the captain of the ship on which Smith served upon his return to duty was that he observed no inability of Smith to perform seaman's duties.

26. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 331 (5th Cir. 1977) (the amount of damages sustained by an injured person is a question of fact and this court will not disturb the district court's determination unless it is clearly erroneous). *See Drake v. E. I. DuPont de Nemours & Co.*, 432 F.2d 276, 279 (5th Cir. 1970).

27. *Compare McDonald v. Patton-Tully Transp. Co.*, 590 F.2d 126, 128 (5th Cir. 1979) (award for pain and suffering a factual determination to be reviewed under a "clearly erroneous" standard) *with Alden v. United States Shipping Bd. Emergency Fleet Corp.*, 24 F.2d 159, 160 (5th Cir. 1928) (award for pain and suffering to be reviewed under an "abuse of discretion" standard). Under either test, the district court's award was not erroneous.

**1066**

The barnacled rule permitting maritime employers to subject a seaman to retaliatory discharge with impunity has been scraped and reexamined for soundness in light of current conditions: This case demonstrates the need to protect the seaman, always subject to being beached for no reason, against discharge as a vindictive reprisal for seeking the protection of the legal system designed to afford him redress.

For these reasons, the judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.