**Jasper J. TATE**

v.

**OVERSEAS BULKTANK CORPORATION.**

**Civ. A. No. B–84–594–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 3, 1985.

Bill J. Sanders, Sanders & Sanders, Beaumont, for plaintiff.

Alan Sampson, Benckenstein, Oxford, Radford & Johnson, Beaumont, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

This action was commenced by Jasper J. Tate. In his original complaint filed on June 20, 1984, plaintiff alleged that he was wrongfully discharged from the Overseas Bulktank Corporation's vessel the S/S OVERSEAS ARTIC, a tanker which carried crude oil. Plaintiff further alleged in his original complaint that because of his "wrongful discharge" he suffered emotional distress, was entitled to maintenance and cure and punitive damages.

This action is now before this court on defendant's motion for summary judgment.

### FACTS

The Particulars of Engagement show that the plaintiff became an employee of the defendant for duty on the S/S OVERSEAS ARTIC on March 31, 1984, as an oiler/maintenance/utility man. This employer-employee relationship continued until June 4, 1984. On June 4, 1984, the plaintiff was given what is best described as a letter entitled "Dismissal for Cause" signed by the 3rd, 2nd, and Chief engineers of the S/S OVERSEAS ARTIC. It is also noted that the plaintiff had oral notice of his discharge prior to receiving the dismissal for cause letter on June 4, 1985.

The tanker S/S OVERSEAS ARTIC is equipped with two distinct systems. One is

an inert gas system which reduces the oxygen content in the cargo areas of a ship by circulating the ship's carbon monoxide into the cargo areas. The purpose of this system is to reduce the possibility of explosion of flammable fumes which remain in the cargo tanks after oil is discharged from an oil tanker. The other system expels carbon and soot build-up by utilizing blown steam. The process of removing the carbon is referred to as blowing the ship's tubes. It is important that the inert gas system and the steam procedure are not in operation at the same time, since steam carries a positive charge which increases the risk of explosion.

After leaving port May 26, 1984, the S/S OVERSEAS ARTIC engaged its inert gas system. Later, with the inert gas system still engaged, the plaintiff informed a fellow-employee, an oiler, to "put the steam on." Putting the steam on refers to the first step in the "blowing the tubes" process. It is necessary for the blowers to be turned on before the tubes can be blown. Thus there remained only one step to be taken to engage the inert gas system and it was the job of the plaintiff to inform the oiler that the inert gas system was engaged. At this point, the second assistant reprimanded the plaintiff, and then conferred with the chief engineer. An argument between all three then ensued and the plaintiff was ordered to leave the engine room.

The plaintiff in his deposition related the events in the following manner:

Q. What did the second assistant say?

A. That's what he said, what I just said: 'What's the matter with you, you stupid bastard? Don't you see the I.G. system is on?'

Q. What was your response?

A. I said, "Yes, I know it's on." *I knew then it was a mistake. I should have held the oiler back, but I didn't think about it and my engineer didn't think about it.* We don't blow the tubes.

The S/S OVERSEAS ARTIC Particulars of Discharge show that the plaintiff left the employ of the defendant June 4, 1984, at the port where he first joined the ship. The plaintiff then instituted this action.

It is the opinion of this court that the defendant's motion for summary judgment should be granted and the plaintiff's complaint dismissed, for the following reasons: (1) the plaintiff's employment contract provided for termination at will; (2) any state law claims have been pre-empted by the collective bargain agreement.

## I. PLAINTIFF'S EMPLOYMENT CONTRACT PROVIDED FOR TERMINATION AT WILL

The Shipping Articles of the S/S OVERSEAS ARTIC provide, in part:

Either party may terminate this agreement for himself by giving to the other at least 24 hours notice prior to arrival of vessel at any United States Port exclusive of Alaska or Hawaii. It is also agreed that the provisions of the respective collective bargaining agreements shall be incorporated as part of the Shipping Articles described above.

The Collective Bargaining agreement provides in § 4 of Article I the following:

The union agrees that the company has the right to reject ... or to discharge any member of the unlicensed personnel who, in the opinion of the company is not satisfactory. If the union considers ... the discharge of any member of the unlicensed personnel as being without reasonable cause such action by the company shall be dealt with under the grievance procedure.

Thus, by contract the plaintiff was an employee subject to discharge at will by his employer on 24 hours' notice. In *Smith v. Atlas Off-Shore Boat Service, Inc.,* 653 F.2d 1057 (5th Cir.1981), the Court of Appeals for this Circuit held that "The maritime employer may discharge a seaman for good cause, for no cause, or even, in most circumstances, for morally reprehensible cause." At p. 1063. In *Smith* the Court did recognize a cause of action for wrong-

ful discharge and damages for mental anguish. However, the court also noted:

> The cause of action we recognize is limited. It subjects the employer to liability for compensatory damages *if,* and *only if, the seaman can establish that a substantial motivating factor in the employer's decision to discharge him was the seaman's personal injury action arising out of the employment relation.* It does not prevent the employer from discharging the seaman for any or no reason, unless that reason is the seaman's filing of a personal injury claim. (Emphasis added)

The plaintiff sustained no personal injury, and his suit was based on his wrongful or "negligent" breach of contract.

The Texas Supreme Court has also recognized a similar narrow exception. In *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985), it was held that an exception exists for an employee who is discharged for the sole reason that the employee refused to perform an illegal act.

After a careful reading of both the *Smith* and *Sabine* opinions, this court concludes that the rationale behind both opinions is to prohibit employers from exerting economic pressure on their employees to perform acts contrary to public policy. No facts have been presented or pleaded in the case at bar concerning employer overreaching, nor did the plaintiff in his deposition reveal any such facts.

■ Thus, pursuant to *Smith* and the contractual provisions cited above, there exists no cause of action for the plaintiff to assert in regard to negligent discharging of a seaman based on general maritime law.[1] It is also important to note the plaintiff did not pursue any grievance procedure provided for by the collective bargaining agreement.

## II. STATE LAW CLAIMS ARE PREEMPTED BY THE COLLECTIVE BARGAINING AGREEMENT.

■ The plaintiff also alleges that the defendant tortiously interfered with the collective bargaining agreement and general business relations between the plaintiff's union and the defendant. For this proposition, the plaintiff cites *Gonzales v. Guiterrez,* (Tex.App.—San Antonio, 04–83–00414, 9–17–85). Shortly before the hearing on the motion for summary judgment, the plaintiff asked this court for leave to file an amended complaint stating a cause of action for libel.

In *Strachan v. Union Oil Company,* 768 F.2d 703 (5th Cir.1985), the Court of Appeals for this Circuit stated:

> The law is completely clear that employees may not resort to state tort or contract claims in substitution for their rights under the grievance procedure in a collective bargaining agreement.

At p. 704. The Court continued:

> Even defammation claims under state law have been preempted by the grievance-arbitration procedure unless malice is shown.

At p. 706. Citing *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). No malice has been alleged by the plaintiff in this case. This court holds this principle pre-empts all claims made by the plaintiff under state law because the plaintiff has not pursued his rights given him under the collective bargaining agreement between his union and his employer. Furthermore, this court denies plaintiff's request to amend his original complaint, as to do otherwise would be pointless in light of the holding in *Strachan.*

This court is of the opinion that the plaintiff's complaint should be dismissed and the defendant's motion for summary judgment should be granted. It is so ORDERED.

---

1. The court in *Smith* treated the wrongful discharge cause of action as an intentional tort arising under general maritime law and not under the Jones Act.