# District Court of the Navajo Nation

## Judicial District of Window Rock, Arizona

**Lt. Col. Henry C. Manuelito, et al.,**
**Plaintiffs,**
**v.**
**W.E. Kellogg, Jr., et al.,**
**Defendants.**
**Decided August 22, 1989**

## FINDINGS OF FACT, OPINION AND ORDER

William A. Goldsmith, William A. Goldsmith, P.A., Counsel for Plaintiffs; James B. Collins, Miller, Stratvert, Torgerson & Schlenker, P.A., Counsel for Defendants.

Judge Robert Yazzie Presiding.

## FINDINGS OF FACT

Four (4) employees of the Navajo Tribe Public Safety Division filed suit against the Navajo Nation for damages arising out of the alleged wrongful termination of their employment. Their complaint asserts the following ten (10) causes of action:

1. Breach of implied employment contracts.
2. Breach of covenant of good faith and fair dealing.
3. Interference with contractual relations.
4. Defamation.
5. Abusive discharge.
6. Negligence.
7. Intentional or reckless infliction of emotional distress.
8. Denial of procedural due process as guaranteed by the Navajo Nation Bill of Rights.
9. Denial of equal protection of the laws of the Navajo Nation.
10. Violation of Navajo Employment Preference Act.

Plaintiff Lieutenant Colonel Henry C. Manuelito is a member of the Navajo Nation, residing in Ganado, Arizona. Plaintiff Peter H. Borrow is a non-Indian residing in Holbrook, Arizona. Plaintiff Sergeant Mervin S. Yoyetewa resides in Gallup, New Mexico. Plaintiff Margaret Keith is a member of the Navajo Nation residing in Crystal, New Mexico.

Defendant W.E. Kellogg, Jr. is a non-Indian and was employed at all relevant times as Executive Director of the Public Safety of the Navajo Nation, Window

Rock, Arizona. Defendant Kim Williams is an enrolled member of the Navajo Nation and was employed as Acting Director of the Office of Personnel Management of the Navajo Nation, Window Rock, Arizona.

Henry Manuelito had been employed as a permanent employee of the Navajo Nation as a Police Lieutenant Colonel since November 1, 1974. Peter H. Borrow had been employed as a permanent employee of the Navajo Nation as Administrative Services Officer III since July 7, 1977. Margaret Keith had been employed as a permanent employee of the Navajo Nation as a cook since May 18, 1982. Mervin S. Yoyetewa had been employed as a permanent employee of the Navajo Nation as a Police Sergeant since March 7, 1983.

On March 13, 1987, Plaintiff Borrow was laid off by Defendant Kellogg. On March 20, 1987, plaintiffs Manuelito, Yoyetewa and Keith were laid off by Defendant Kellogg. Prior to that time, there had not been any hint that these four employees performed their duties in any way but in a satisfactory manner. Although plaintiffs requested grievance hearings in a timely manner, Defendant Williams summarily denied their requests and approved the layoffs after the fact. Plaintiffs were, in their view, not afforded any of the statutory and administrative protections. These protections included, but were not limited to various sections of Personnel Memorandum No. 2, Employee Relations (appendix to Title 2, N.T.C.), and provisions of the Memorandum concerning Employee Layoff Procedures promulgated by the Office of Personnel Management on March 26, 1986 (attached hereto). On June 22, 1987, plaintiffs filed suit.

On September 3, 1987, defendants answered the complaint. A Motion to Dismiss was filed on December 11, 1987, and oral arguments were heard on April 7, 1988. The following matters are at issue:

1. Whether the Navajo Nation is immune from suit under the Navajo Nation Sovereign Immunity Act, 1 N.T.C. Sec. 351 *et seq.*
2. Whether the Navajo District Courts have jurisdiction to hear employment grievance matters.
3. Whether the Navajo Nation must be named as party defendant in this case.
4. Whether the Navajo Tribal Courts have jurisdiction to permit class action suits.
5. Whether there has been an accord and satisfaction when the Navajo Nation made a good faith attempt to administratively correct and resolve the matters set out in plaintiffs' Complaint by affording hearings to the plaintiffs on July 23, and 24, 1987, which were rejected.

## OPINION

### ISSUE I: WHETHER THE NAVAJO NATION IS IMMUNE FROM SUIT UNDER THE NAVAJO NATION SOVEREIGN IMMUNITY ACT

The right of the Navajo Nation to assert a defense of sovereign immunity whenever it is sued is beyond question. *Johnson v. Navajo Nation, et al.*, 5 Nav. R. 192, 194 (1987). The power to raise a defense of sovereign immunity and to waive the doctrine of sovereign immunity, is still within the inherent sovereign powers of the Navajo Nation. *Id.* And, the Navajo Nation has, in the Navajo Sovereign Immunity Act, 1 N.T.C. Sec. 351 *et seq.*, set out just how, when and under what circumstances it can be sued.

As a general principle, the Navajo Nation is immune from suit unless the claim was specifically authorized by one of the exceptions, 1 N.T.C. Sec. 354, *Yellowhorse et al. v. Navajo Tribe*, WR-CV-122-84, holds that there must be an exception listed under the Act in order for the Navajo Nation to be sued.

The Navajo Nation may be sued in the courts of the Navajo Nation with respect to any claim for which the Navajo Nation carries liability insurance, *Johnson, supra*. Under these circumstances, the Navajo Nation has expressly waived its immunity. A Navajo court will have jurisdiction over the Navajo Nation in a case which falls within this exception. *Johnson, supra*.

The claims advanced by plaintiffs can be described as variously sounding in tort, contract and civil rights. The civil rights claims include allegations of deprivation of property rights (loss of job, retirement and medical benefits) as well as other violations of due process. The Navajo Nation is especially concerned with the preservation of civil rights. See 1 N.T.C. Sec. 354 (e)(5). The question, then, is whether any of these tort, contract and civil rights claims, if proven, would be covered by an insurance policy.

The Supreme Court, in *Johnson, supra*, has set out the duties of a district court judge when confronted by a claim against the Navajo Nation. It is the judge's duty to examine the insurance policy and note the coverage. "That is a matter for the district court to decide." *Johnson*, at 198.

The insurance policy relevant to this case is Royal Insurance Company Policy # P-YU-1O-12-95. It was in effect from October 1, 1986 through October 1, 1987.

The interpretation of provisions of insurance policies sometimes involves close calls; however, this court must keep certain principles in mind. "The insurance exception to Sovereign Immunity has been enacted for the benefit of injured parties, and thus, it must be interpreted to the benefit of the injured plaintiffs." *Johnson*, at 196. As the insurance policy provisions effectively become part and parcel of the waiver of sovereign immunity, the insurance policy must be interpreted for the benefit of the injured plaintiffs.

The policy in question states that "[Royal will] indemnify insured for all sums which the Insured shall become legally obliged to pay as damages because of ...

personal injury." Personal injury is defined as follows:

> 'Personal injury' means the following, including death resulting therefrom: Bodily Injury; Mental Injury, Mental Anguish, Shock, Sickness, Disease, Disability, False Arrest, False Imprisonment, Wrongful Eviction, Wrongful Entry, Wrongful Detention, Malicious Prosecution, Discrimination (unless prohibited by law), Humiliation; also Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, except that which arises out of any Advertising activities.

Thus, in the case at hand, all causes of action asserted by plaintiffs could, depending upon the facts presented at trial, be covered. Although not all jurisdictions agree, violations of employment contracts can give rise to recovery for emotional distress, mental anguish and mental injury. See, for example, *Smith v Offshore Boat Service*, 653 F.2d 1057 (5th cir 1981). Also *see* 44 ALR 4th 1131. Similarly, violation of due process and equal protection rights also give rise to similar damages. Thus, plaintiffs could be entitled to compensation for harms suffered by them arising out of actions taken by employees of the Navajo Nation and might recover damages on all of their causes of action.

If the intent was to provide no coverage for civil rights violations, clearly this could have been expressly excluded from the insurance policy. In fact, there are seventeen exclusions enumerated in the insurance policy and civil rights violations are not among them. And, aside from the rules stated in *Johnson*, and quoted above, the Navajo Tribal Council clearly intended that there be civil rights coverage if at all possible. This intent is clear in 1 N.T.C. Sec. 354 (e)(5), which reads:

> Subject to all other provisions of this Act, the express coverage of any commercial liability policy insuring the Navajo Nation or of any self-insurance program established by the Navajo Nation, for sum which the Navajo Nation as insured shall become legally obligated to pay as damages, shall include liability for and/or property damages, shall include liability for such actual monetary loss and damage which is established by clear and convincing evidence, to be the direct and proximate result of the wrongful deprivation or impairment of civil rights as set forth in Chapter 1 of Title 1 of the Navajo Tribal Code, the Bill of Rights of the Navajo Nation. In the sound exercise of judicial discretion, the Courts of the Navajo Nation may, to the extent deemed proper and appropriate in any action for damages for wrongful deprivation or impairment of civil rights as provided herein, award necessary costs of suit and/or reasonable fees, based upon time and value, incurred for legal representation; or require each or any party thereto, to bear their own respective costs and/or legal fees incurred therein.

Consequently, the defendants are not immune from the suit at hand.

## ISSUE II: WHETHER THE NAVAJO COURTS HAVE JURISDICTION TO HEAR EMPLOYMENT GRIEVANCE MATTERS

Seven N.T.C Sec. 253 lists cases in which the District Courts of the Navajo Nation have jurisdiction. That section provides:

The District Courts of the Navajo Nation shall have original jurisdiction over:
(1) Crimes. All violation of laws in the Navajo Nation committed within its territorial jurisdiction.
(2) Civil Causes of Action. All civil actions in which the Defendant is a resident of Navajo Indian Country, or has caused an action to occur within the territorial jurisdiction of the Navajo Nation.
(3) Decedent's Estates. All cases involving the descent and distribution of deceased Indians' unrestricted property found within the territorial jurisdiction of the court.
(4) Miscellaneous. All other matters over which jurisdiction has been heretofore vested in the Navajo Tribal Court of Indian Offenses.

This Court has jurisdiction to hear grievance matters. 7 N.T.C. Sec. 253(2). The defendants rely on *Navajo Nation Division of Resources v. Spencer*, 5 Nav. R. 109 (1986), and *Nez, et al. v. Bradley, et al.*, 3 Nav. R. 126 (1982), but their reliance is misplaced. These cases only deal with appeals of administrative decisions to the Navajo Supreme Court. These are easily distinguished from the present case. Here, an administrative body never did make a decision and, further, an appellate court is not involved. In *Nez, supra*, the Supreme Court points out the differences between a court of general jurisdiction (i.e., the District Court) and a court of limited jurisdiction (i.e., the Court of Appeals). The same distinction applies here.

Defendants argue that "Perhaps in the future the Navajo Tribal Council will enact an Administrative Procedure Act which will cover appeals from administrative agencies. Until that act becomes real, it is inappropriate for the Supreme Court to create their jurisdiction in an area where the Tribal Council has not spoken." However, our Supreme Court has dealt with this issue in some detail and with much eloquence. In *Navajo Skill Center, et al. v. Benally*, 5 Nav. R. 93 (1986), the Court states:

> Judicial review of administrative action is reasonable and necessary. There are certain fundamental principles that support such review. Some form of judicial review strengthens rather than weakens the administrative process. Judicial review develops the principles of fairness and due process which are necessary for the administrative body to obtain respect for and obedience of its decisions. Denial of judicial review would be a deprivation of what the courts have to offer. Judges become specialists in civil rights issues, in the interpretation of statutes, in defining and enforcing fair procedures, in determining whether there has been an abuse of discretion. Finally, judicial review of administrative action is consistent with the principle and desirability of appellate review of tribal court proceedings.

Judicial review of administrative action may be authorized by statute, implied in the inherent powers of the courts, or mandated by civil rights guarantees of due process and equal protection. Thus it is rare that all agency action is insulated from some form of judicial review. The questions then in each individual case become (1) what action is reviewable (2) when is it reviewable (3) what is the scope of review and (4) which court will do the initial reviewing.

Of course, no one argues that administrative remedies should be exhausted. However, in the case at hand, as will be discussed in Section III, there was simply no administrative action even though it was mandated. This Court, on that ground alone, has the right and even the duty to act. Furthermore, pursuant to 1 N.T.C. Sec. 354 (e)(5), this Court has jurisdiction to hear actions in which it is alleged that civil rights have been violated. That is clearly the case here, and this is an additional ground for jurisdiction.

## ISSUE III: FAILURE TO JOIN NAVAJO NATION AS A PARTY

The defendants in this action were acting as employees of the Navajo Nation. It is in that capacity they are being sued.

This suit has proceeded as though it were a suit against the Navajo Nation. Notice has been given the Chairman of the Navajo Nation and the Attorney General. This matter has been defended by attorneys hired by the Navajo Nation's liability insurance carrier. The question of the Nation's insurance is essential to this matter. The attorneys for the Navajo Nation have raised the defense of sovereign immunity, and therefore have acknowledged that the sovereign (the Navajo Nation) is the true defendant. The defendants have (rightfully) attempted to avail themselves of whatever immunity the Navajo Nation might provide. If the Nation were immune so would the defendants; the suit cannot proceed against them alone. Therefore, the only question is whether the omission of the Navajo Nation as a named defendant is of any consequence. I think not.

The real question, as dealt with in Section One (1) of this Opinion, is whether the Navajo Nation has consented to this suit. I find that it has. Having found this, there is no necessity for the Navajo Nation to be named as a party. The defendants are clearly part of the executive branch of the Navajo Nation. A judgment against them will run to the Navajo Nation insurance policy and its interest will be protected.

*Hall v. Arthur*, 3 Nav. R. 35 (1986), deals with the question whether this Court can deal with the rights and obligations of parties who are not part of the lawsuit. That case holds that it can only deal with the relative rights of the parties before it, and that it would be inappropriate for a court to determine matters affecting a person not a party to litigation, However, in this case, the Navajo Nation is effectively a part of this litigation. Its lawyers are defending it, its insurance is involved, and it is the rights of its employees that are being determined. Although not absolutely necessary, it would perhaps be a good practice in these instances for the Navajo Nation to be named a party as well as its employees.

Therefore, pursuant to 7 N.T.C. Sec. 255, plaintiffs will be permitted to amend their complaint in order to include the Navajo Nation as a defendant. However, in as much as all procedures have been properly complied with, additional service on the Navajo Nation will not be necessary. Further, the Navajo Nation has 60 days in which to answer said amended complaint.

## ISSUE IV: CLASS ACTION

This action is not a class action; thus, defendants' arguments against such class action will not be considered by this Court.

## ISSUE V: JUSTIFIABLE DELAY, UNUSUAL CIRCUMSTANCES, AND ACCORD AND SATISFACTION

Plaintiffs lost their jobs in March 1987. They requested grievance hearings in a timely manner, and their requests were denied. In June 1987, plaintiffs filed suit, and in July, the Navajo Nation belatedly offered grievance hearings. The defendants now claim that the delay in offering the required grievance hearings was justified due to unusual circumstances. These circumstances include that there was a new Tribal Administration, that the grievance committee members and panel authorities had to be elected and or appointed, and that these people had to receive adequate training.

As already pointed out, courts require that administrative remedies be exhausted before they get involved. This is simply a matter of common sense. More times then not, the matter can be settled administratively, and the court's resources will not be unnecessarily burdened. Even if not settled administratively, often the administrative process will develop facts which will aid in the court's consideration of the matter. For these and other reasons, the courts will almost always wait for administrative exhaustion.

In the matter at hand, plaintiffs attempted to exhaust administrative remedies. They asked that the rules be followed. They asked for grievance hearings in a timely manner. The authorities had no choice but to grant this request, but it was summarily denied. There is nothing in the record that indicates that plaintiffs would have had any chance for relief had they not filed suit. Were they to guess that grievance procedures would be offered months down the road? Were these procedures offered only because suit was filed?

Plaintiffs no doubt had to expend considerable amounts of time and money in hiring attorneys to represent them in this matter. The attorneys had to do much research, draw up and serve a complaint. This Court is familiar with the expenses connected with litigation of this sort. All this might have been avoided had the Navajo Nation followed its rules and conducted grievance hearings.

It is understandable that the grievance procedures may be delayed a few days, and courts will often take understandable delays into account. Courts will often bend over backwards in order to permit an administrative process to continue.

However, in this case, proposed administrative hearings were unconscionably delayed.

Defendants, in their brief, make much of *Navajo Skill Center, et al. v. Benally*, 5 Nav. R. 93 (1986). But this case actually supports plaintiffs. In *Benally*, plaintiff refused to follow the administrative process and commenced litigation. In this case, plaintiffs tried to follow the administrative process, but were summarily rebuked and had no choice but to go to court.

## CONCLUSION

For the reasons outlined above, defendants' Motion to Dismiss is hereby DENIED.

IT IS FURTHER ORDERED that this matter shall be scheduled for a hearing on the merits.