United States Court of Appeals
Fifth Circuit

**F I L E D**

December 5, 2006

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals
For The Fifth Circuit*

No. 05-30823

BRUCE HYMAN,

Plaintiff - Appellant,

v.

TRANSOCEAN OFFSHORE U.S.A., INC.; SEDCO FOREX CORPORATION,

Defendants - Appellees.

Appeal from the United States District Court
For the Eastern District of Louisiana
No. 2:03-CV-02959

Before KING, GARZA, and OWEN, Circuit Judges.

PER CURIAM:*

   In 1996, Schlumberger Ltd. employed Bruce Hyman as a subsea engineer. In 1998,

Schlumberger, which later became Transocean, Inc., assigned Hyman to the construction of

the M/V CAJUN EXPRESS. The CAJUN EXPRESS was designed to be a "mobile offshore

drilling unit" capable of deepwater drilling. It was partially constructed at a shipyard in

Singapore, where it underwent sea trials during the first half of 2000. Following successful

---

   *Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sea trials, the CAJUN EXPRESS was towed to the Gulf of Mexico, where construction was to be completed. The rig arrived in the Gulf of Mexico in August 2000. On October 25, 2000, during this second phase of construction, Hyman was injured while onboard the CAJUN EXPRESS.

Hyman sued Transocean on October 22, 2003 under the Jones Act and general maritime law. In November 2003, Hyman had a dispute with his supervisor. In January 2004, Transocean temporarily transferred Hyman from the CAJUN EXPRESS to an on-shore facility in Houston, where Hyman waited for a new assignment. Some time later, Hyman returned to the CAJUN EXPRESS and took pictures of the stairs where his 2001 injury occurred. He apparently did this at the request of his attorney, who wanted to become familiar with the area where the injury occurred. While taking pictures, Hyman removed a skid resistant plate from the stairs so as to replicate their condition at the time of his injury. Hyman did not coordinate his actions with appropriate rig personnel. After discovering that Hyman had disassembled the stairs and taken pictures, Transocean terminated Hyman's employment for "Violation of company policy: Conflict of Interest in addition to past conflicts with Rig Management."

Hyman then amended his original complaint and added a claim for retaliatory discharge. Transocean moved for summary judgment as to all claims on the grounds that (i) the CAJUN EXPRESS was not a "vessel in navigation" at the time of Hyman's injury, and (ii) Hyman presented no evidence that his lawsuit played a substantial part in Transocean's decision to terminate his employment. The district court granted Transocean's

2

motion, and Hyman appeals. We review a grant of a summary judgment de novo.[1]

We first consider whether Transocean is entitled to summary judgment on Hyman's Jones Act and maritime law claims. A Jones Act "seaman" is one who has "a substantial employment-related connection to a vessel *in navigation*."[2] One who "assist[s] in the building and ultimate commissioning of a launched but uncompleted vessel floating or maneuvering in navigable waters is not a seaman within the meaning of the Jones Act, because his vessel is not yet an instrumentality of commerce—private or public—and is therefore not 'in navigation.'"[3] Whether an uncompleted craft is a "vessel in navigation" turns on "whether the vessel has been placed in navigation for its intended purpose."[4]

At the time Hyman was injured, the CAJUN EXPRESS was still under construction. Although it was partially completed, it lacked certain vital equipment and could not operate as a "mobile offshore drilling unit." The CAJUN EXPRESS was not placed in navigation for its intended purposes until it had been fully constructed and had engaged in the actual drilling operations for which it was built. This did not occur until April of 2001, six months after Hyman's initial injury. The CAJUN EXPRESS was thus not a "vessel in navigation" at the time of Hyman's injury.

Hyman argues that even if the CAJUN EXPRESS was not a vessel at the time of his

---

[1]*McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 424 (5th Cir. 2006).

[2]*Chandris v. Latsis*, 515 U.S. 347, 373 (1995).

[3]*Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958 (5th Cir. 1971).

[4]*Garret v. Dean Shank Drilling Co., Inc.*, 799 F.2d 1007, 1009 (5th Cir. 1986).

3

injury, he was nonetheless a "seaman" because his status as a subsea engineer did not change from the time he was hired in 1996, to the time of his injury in 2000. However, Hyman was assigned to the construction of the CAJUN EXPRESS in 1998, and he continued working in this capacity until the vessel was put it navigation for its intended purpose in 2001. Regardless of Hyman's seaman status prior to his assignment to the CAJUN EXPRESS in 1998, he was not a seaman from 1998 until 2001 because the CAJUN EXPRESS was still under construction and not yet a vessel.[5] Transocean therefore was entitled to summary judgment on Hyman's Jones Act claim. Transocean was also entitled to summary judgment on the claims for unseaworthiness and negligence, since CAJUN EXPRESS was still under construction when Hyman was injured.[6]

We now address Hyman's retaliatory discharge claim. As noted, Hyman was not seaman when he was initially injured onboard the CAJUN EXPRESS. However, Hyman became a seaman in April 2001, when the CAJUN EXPRESS became a "vessel in navigation" and he was assigned to its crew. Hyman filed his personal injury suit in October 2003, at which point he was still a seaman. Although it is unclear if Hyman was a still a seaman at the time he was discharged in June 2004, his status on the date he filed his claim is the crucial issue. A discharge "in retaliation for [a] *seaman's exercise of his legal right*

---

[5]*See Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 556 (1997) ("[T]he employee's prior work history with a particular employer may not affect the seaman inquiry if the employee was injured on a new assignment with the same employer.").

[6]*Williams*, 452 F.2d at 958 n.5 ("[A] tort arising out of work on a launched but incompleted vessel also lacks maritime flavor, despite the fact that the vessel is lying in navigable waters.").

4

to file a personal injury action against [his] employer constitutes a maritime tort."[7]  Since Hyman was a seaman when he filed his lawsuit, he is entitled to state a maritime claim for retaliatory discharge.

In order to avoid summary judgment on his retaliatory discharge claim, Hyman must affirmatively establish that Transocean's decision was "motivated in substantial part by the knowledge that" Hyman had filed a personal injury action.[8]  Hyman established that he was terminated soon after taking pictures to support his lawsuit, and that the reason for his termination was a "conflict of interest."  In response, Transocean provided evidence that Hyman had a past conflict with his manager, that he had violated company policy by not coordinating his disassembly of the stairway with rig personnel, and that Transocean's regional manager told Hyman not to "worry" about the lawsuit because "people sue the company all the time."

An employer may discharge a seaman "for any or no reason, unless that reason is the seaman's filing of a personal injury claim."[9]  Transocean provided evidence that it discharged Hyman for his past conflict with management, combined with his violation of company policy in disassembling part of the rig without informing the appropriate personnel. Transocean's evidence suggests that it was not Hyman's "filing of a personal injury claim" that created the "Conflict of Interest" for which he was discharged.  Rather, it was Hyman's

---

[7]*Smith v. Atlas Off-Shore Boat Serv.*, 653 F.2d 1057, 1063 (5th Cir. 1981) (emphasis added).

[8]*Id.* at 1063–64.

[9]*Id.* at 1065.

placing his own personal interest in his lawsuit above Transocean's interests in operating its vessel. With this evidence in mind, we conclude that Hyman did not present sufficient evidence to establish a fact question regarding whether his filing of a lawsuit played a substantial part in Transocean's decision to discharge him. We AFFIRM the district court's grant of summary judgment.