**Hubert GARRIE, Plaintiff–Appellant,**

v.

**JAMES L. GRAY, INC., and Texaco Inc., Defendants–Appellees.**

No. 89–4815.

United States Court of Appeals, Fifth Circuit.

Sept. 25, 1990.

Rehearing Denied Oct. 24, 1990.

Christopher L. Zaunbrecher, Lafayette, La., for plaintiff-appellant.

William O. Bonin, Landry, Watkins & Bonin, New Iberia, La., for James L. Gray, Inc.

Jerry A. Oubre, Caffery, Oubre, Dugas & Campbell, New Iberia, La. and C. Suzanne Dittmer, New Orleans, La., for Texaco, Inc.

Before THORNBERRY, JOHNSON, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

We are asked to create a new exception to the employment at will doctrine by expanding 46 U.S.C. § 2114, which forbids retaliation against "whistleblower" seamen who report or are about to report safety violations to the Coast Guard, in order to protect those who merely make inquiries of the Coast Guard but do not report a violation or file a formal complaint. Because we conclude that such a result is foreclosed by the plain meaning and evident purpose of the statute, as well as by our recent decision in *Feemster v. BJ–Titan Servs.*

Co./Titan Servs., Inc., 873 F.2d 91 (5th Cir.1989), we decline the invitation and affirm the judgment of the district court.

I.

Plaintiff Hubert Garrie was employed by defendant James L. Gray, Inc. ("Gray"), as a skipper on the MR. BILL, a vessel used to transport workers and equipment to various work sites. Defendant Texaco Inc. ("Texaco"), leased the MR. BILL, complete with its crew, from Gray on a day-to-day basis.

On several occasions in June 1986, Garrie piloted the MR. BILL on both a "day run" and a "night run" within the same twenty-four-hour period and thus worked in excess of the twelve hours per day permitted by 46 U.S.C. § 8104(h).[1] Believing this practice to be unsafe as well as illegal, Garrie on June 23 informed Texaco representative Stuart Hidalgo that he would no longer work more than twelve hours per day and that if Texaco wished to make both day and night runs with the MR. BILL, the vessel would require another captain and a full crew. Garrie did not complain about his working hours to anyone at Gray.

On June 25, Garrie telephoned Commander A.E. Spackman of the Coast Guard. After identifying himself, but not his employer, Garrie inquired whether "the regulation regarding maximum working hours" was still in effect. Spackman advised Garrie that it was, but did not refer the matter to an investigator, since Garrie had stated that he did not wish to file a formal complaint. On July 1, Garrie informed Hidalgo that the Coast Guard had confirmed his understanding of the applicable maximum working hours and that it was still his intention to refuse to work more than twelve hours per day.

Two days later, Garrie was reassigned to the CAPT. JIM, another crewboat owned by Gray and leased by Texaco.[2] His transfer had been requested by Jerry Lambert,

[1]. Section 8104(h) provides, "On a ... [towing vessel that is at least 26 feet in length], an individual licensed to operate a towing vessel may not work more than 12 hours in a consecutive 24–hour period except in an emergency."

[2]. Garrie did not protest the transfer, as the CAPT. JIM operated out of Ivanhoe, Louisiana, which was located closer to Garrie's home than was the MR. BILL's port.

a Texaco production supervisor. Lambert felt that day and night runs on the MR. BILL were necessary in order to service a "problematic well that needed attention" and complained to Garrie's supervisors that if Garrie refused to make both runs, they should find another captain who would. Lambert did not ask Gray to fire Garrie; rather, he requested that Garrie be reassigned to a vessel other than the MR. BILL.

For the next few weeks, Garrie piloted the CAPT. JIM on the night run out of Ivanhoe. On July 21, however, Texaco discontinued the night run of the CAPT. JIM.[3] As a result, the CAPT. JIM required only one skipper and Garrie, who had less seniority than the other captain assigned to the vessel, was laid off. Garrie sought another job with Gray, but his old position on the MR. BILL was unavailable,[4] and other available positions proved unsuitable: Garrie could not work offshore, because he suffered from seasickness and refused to work on a certain vessel because of personal problems involving another employee and Garrie's former wife. Garrie has not worked for Gray since his layoff in July 1986.

In February 1987, Garrie filed suit in federal district court against Gray and Texaco, asserting admiralty and maritime jurisdiction and also, inconsistently, demanding a jury trial.[5] He claimed that the defendants had discharged him for making a report to the Coast Guard, in violation of 46 U.S.C. § 2114[6] and general maritime law, and had conspired to deprive him of the equal protection of the laws, in violation of 42 U.S.C. § 1985(3).

In October 1989, the case proceeded to a bench trial against Gray alone, Texaco previously having been dismissed on the basis of its discharge in bankruptcy. At the close of all the evidence, the district court entered judgment for Gray, reasoning that Garrie had failed to establish an exception to the employment at will doctrine in his case.[7] Under *Feemster*, Garrie could not assert a wrongful discharge claim on the ground that he was fired for refusing to work in excess of the twelve-hour limit imposed by section 8104(h), and, because Garrie had not reported a safety violation to the Coast Guard, or led anyone to believe that he planned to do so, he could not claim the narrow protections of section 2114. Finally, the district court denied

---

**3.** Garrie does not allege that Texaco's decision to discontinue the night run of the CAPT. JIM had anything to do with his complaints regarding working hours or his communications with the Coast Guard.

**4.** Apparently, Texaco insisted that Garrie not be reassigned to the MR. BILL.

**5.** The district court struck Garrie's demand for a jury trial, correctly concluding that the seventh amendment guarantee of trial by jury does not apply in admiralty actions (*see, e.g., T.N.T. Marine Serv. v. Weaver Shipyards*, 702 F.2d 585, 587 (5th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983)) and that 46 U.S.C. § 2114, upon which Garrie based his right to relief, was a statute dealing with admiralty and maritime matters.

**6.** That statute provides,

Protection of seamen against discrimination
  (a) An owner, charterer, managing operator, agent, master, or individual in charge of a vessel may not discharge or in any manner discriminate against a seaman because the seaman in good faith has reported or is about to report to the Coast Guard that the seaman believes that a violation of this subtitle, or a

regulation issued under this subtitle, has occurred.
  (b) A seaman discharged or otherwise discriminated against in violation of this section may bring an action in an appropriate district court of the United States. In that action, the court may order any appropriate relief, including—
  (1) restraining violations of this section; and
  (2) reinstatement to the seaman's former position with back pay.

**7.** Generally, "[i]n the absence of a contractual provision specifying a definite term or voyage during which a seaman will be employed, the seaman's employment is 'terminable at will by either party.'" *Smith v. Atlas Off-Shore Boat Serv., Inc.*, 653 F.2d 1057, 1060 (5th Cir. Unit A Aug. 1981) (quoting *Findley v. Red Top Super Markets, Inc.*, 188 F.2d 834, 837 n. 1 (5th Cir.), *cert. denied*, 342 U.S. 870, 72 S.Ct. 112, 96 L.Ed. 654 (1951)). In *Smith*, 653 F.2d at 1061–63, we recognized a narrow exception to the employment at will doctrine, holding that a seaman who had been fired for bringing a personal injury suit under the Jones Act could assert a retaliatory discharge claim against his employer.

Garrie's section 1985 conspiracy claim, explaining that "[t]itle VII of the Civil Rights Act of 1964 is irrelevant to this case, and thus Garrie's claim under ... [this statute] is without merit."

On appeal, Garrie asserts various challenges to the district court's pre- and post-trial rulings. He first contends that his claims against Texaco were not discharged in the corporation's bankruptcy proceedings, as they involved "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6).[8] In addition, Garrie maintains (1) that the district court clearly erred in finding that he did not report a violation to the Coast Guard; (2) that he has a wrongful discharge claim under section 2114 or general maritime law even if he did not make such a report; and (3) that the evidence adduced at trial proved that Texaco and Gray had conspired to deprive Garrie of the equal protection of the laws in violation of section 1985.[9]

## II.

■ Before reaching the central question presented in this appeal, we must first decide whether Texaco properly was dismissed on the basis of its discharge in bankruptcy. As is widely known, Texaco and two affiliated entities initiated voluntary Chapter 11 proceedings in the bankruptcy court for the Southern District of New York in April 1987. Approximately one year later, the bankruptcy court confirmed a plan of reorganization and granted the reorganized debtors a discharge of all debts.

Garrie, through his attorney, filed a timely proof of claim in that bankruptcy proceeding. There, he asserted that

... debtor, as the charterer or managing operator of a vessel in navigation, dis-

charged and otherwise discriminated against claimant because claimant reported to the U.S. Coast Guard a violation of federal safety regulations by debtor, which discharge and discrimination were prohibited by 46 U.S.C. § 2114.

On June 1, 1988, Garrie's attorney was notified that Texaco had moved for disallowance of the claim "on the ground that the books and records of the reorganized debtor do not reflect any amount due and owing" and that he could appear and contest that motion at a specified time and place. Garrie took no action in response to the notice, and on August 24 the bankruptcy court issued an order disallowing numerous claims, Garrie's among them. Garrie did not appeal that order.

Although he does not dispute any of these facts, Garrie contends that his claims against Texaco were not dischargeable in bankruptcy, because they involved "willful and malicious injury" within the meaning of section 523(a)(6). This argument fails for two independently sufficient reasons. First, even were we to conclude that retaliatory discharge constitutes "willful and malicious injury" (a proposition for which Garrie cites no authority), Garrie nonetheless cannot rely upon that exemption, since he did not assert it in the bankruptcy court.

As Texaco points out, the "willful and malicious injury" exemption is not automatic; instead, it is incumbent upon the creditor to assert the exemption and object to the discharge.[10] Garrie, however, took no action in Texaco's bankruptcy proceedings beyond filing a proof of claim. Although he received actual notice that Texaco had moved to disallow his claim, he did not appear to contest that motion, nor did he

---

**8.** Section 523(a)(6) provides in pertinent part that a discharge in bankruptcy "does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity."

**9.** Garrie also protests the district court's decision to strike his demand for a jury trial. Because we have addressed that argument, *see supra* note 5, we discuss it no further.

**10.** 11 U.S.C. § 523(c) provides in pertinent part that

... the debtor shall be discharged from a debt specified in paragraph ... (6) of subsection (a) of this section, *unless, on request of the creditor to whom such debt is owed,* and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph ... (6) ... of subsection (a) of this section. [Emphasis added.]

appeal from the bankruptcy court's order of dismissal. Accordingly, Garrie's claim, even if it does involve "willful and malicious injury," was properly discharged in bankruptcy.

■ Moreover, the "willful and malicious injury" exception to discharge, like all of the exceptions to discharge found in section 523(a), applies only to individual, not corporate, debtors. As explained in *Yamaha Motor Corp., U.S.A. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir.1985),

> ... both the language of ... [section 523(a)] and the case law interpreting the statute militate against applying the exemption to corporate debtors. *See In re Kuempel Co.*, 14 B.R. 324, 325–27 (Bankr.S.D.Ohio 1981). *See also In re Lucas*, 21 B.R. 585 (Bankr.W.D.Pa.1982). Congress clearly did not intend the term 'corporate debtor' to be used interchangeably with the term 'individual debtor,' as such a construction would 'render meaningless employment by Congress of the term "individual"'' (quoting *Kuempel*, 14 B.R. at 325).

Texaco is, of course, a corporate debtor; accordingly, Garrie's claims against it, even if resulting from "willful and malicious injury," were properly discharged in bankruptcy. The district court did not err in dismissing Texaco from this case.

### III.

#### A.

We now turn to the central question presented in this appeal—namely, whether Garrie has stated a claim for wrongful discharge under section 2114 or general maritime law. At the outset, we note that the district court was not clearly erroneous in finding that Garrie did not report, or lead anyone to believe that he planned to report, a violation of section 8104(h); indeed, that finding is amply supported by the record.

Garrie testified at trial that he "called the Coast Guard in order to get information about running times" and to verify his understanding of the applicable rules before discussing the matter with Texaco.

He further acknowledged that he did not ask the Coast Guard to take any action against Texaco or Gray. Spackman testified that while he had no independent recollection of his conversation with Garrie, his contemporaneous notes indicated that Garrie did not reveal the name of his employer and did not wish to file a formal complaint. Spackman's customary practice was to refer complaints to an investigating officer; however, he made no such referral in Garrie's case.

Moreover, the record establishes that Garrie did not lead anyone to believe that he planned to make a report. After Garrie informed Texaco that he had made inquiries of the Coast Guard to confirm his understanding of maximum working hours and, accordingly, would no longer work more than twelve hours per day, he was reassigned to the CAPT. JIM. He accepted the new assignment without complaint, as it enabled him to work closer to home and did not require him to work more than twelve hours per day. At no time following his transfer did Garrie indicate that he planned any further communication with the Coast Guard.

#### B.

■ Section 2114 is narrowly tailored to protect only the seaman who "in good faith has reported or is about to report to the Coast Guard ... a violation of this subtitle, or a regulation issued under this subtitle...." Its evident purpose is to promote compliance with maritime statutes and regulations by encouraging seamen (who are in the best position to observe violations) to make reports to the Coast Guard without fear of termination or other reprisals.

Garrie, however, merely made an inquiry of the Coast Guard as to whether a particular statute was still in effect. He sought information, but did not provide it. He did not file a complaint, nor did he reveal the name of his employer or the vessel upon which he was employed—information without which the Coast Guard could not investigate or prosecute a violation. In sum, Garrie's communication with the Coast Guard did not satisfy the requirements of

section 2114, nor did it serve the statute's purposes. He thus has no claim for wrongful discharge under section 2114.

 Moreover, circuit precedent forecloses Garrie's alternative argument that we should recognize such a claim under general maritime law. In *Feemster*, a seaman who was discharged for refusing to work more than the twelve hours per day permitted by section 8104(h) brought a wrongful discharge claim against his employer. He argued that, under our decision in *Smith*, he could not be terminated for refusing to commit an unlawful act. *See Smith*, 653 F.2d at 1061 n. 9 (citing authorities recognizing exceptions to employment at will doctrine). We concluded, however, that there existed no general cause of action for wrongful discharge under maritime law, *Feemster*, 873 F.2d at 93, and that the plaintiff "had no personal right to refuse a management directive with which he disagreed, even if it violated a safety statute." *Id.* Instead, his remedy was to contact the Coast Guard and enlist its aid in correcting the violation.[11]

Garrie contends that his case is distinguishable from *Feemster* in that he, unlike the plaintiff there, did speak with the Coast Guard. However, as we noted above, Garrie did not make a report thereto; he merely contacted the Coast Guard to verify his understanding of maritime law and then used that knowledge "to refuse a management directive with which he disagreed." Under *Feemster*, Garrie had no personal right to do so, and no ground for relief under general maritime law if he was fired for that reason. The district court thus was correct in concluding that Garrie failed to establish an exception to the employment at will doctrine and consequently had no claim for wrongful discharge.

---

**11.** We did not discuss § 2114 in *Feemster*, presumably because the plaintiff, who had not communicated in any way with the Coast Guard, did not raise it.

**12.** Garrie argues that Gray and Texaco conspired to deprive him of two federally protected rights—his right to report a violation to the Coast Guard pursuant to § 2114 and his first amendment right to communicate with the Coast Guard.

## IV.

 Finally, Garrie contends that even if he has no claim for wrongful discharge, he nevertheless has demonstrated that Gray and Texaco conspired to deprive him of the equal protection of the laws in violation of section 1985(3).[12] However, we agree with the district court that that statute has no application to the facts of this case. As the Supreme Court explained in *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), there can be no section 1985 violation absent "some racial or otherwise class-based, invidiously discriminatory animus in the conspirators' action." Garrie has shown no such discriminatory animus, nor has he demonstrated his membership in any protected class.[13] Accordingly, he cannot state a claim under section 1985(3).

AFFIRMED.

---

**13.** Garrie cites *Lapin v. Taylor*, 475 F.Supp. 446, 449 (D.Hawaii, 1979), for the proposition that "whistleblowers" are a protected class for purposes of § 1985. The coverage of *Lapin*, however, was restricted to federal employees. *Id.* at 450 n. 11. Moreover, that decision has been explicitly rejected in two more recent decisions from other courts. *See Buschi v. Kirven*, 775 F.2d 1240, 1258–59 (4th Cir.1985); *Pope v. Bond*, 641 F.Supp. 489, 498–99 (D.D.C.1986).