William **BORDEN**

v.

**AMOCO COASTWISE TRADING COMPANY.**

No. CIV. A. G–96–533.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 18, 1997.

---

Timothy T. Patula, Patula & Associates, Chicago, IL, William F. Spielberger, William F. Spielberger & Associates, Chicago, IL, for Plaintiff.

Richard Austin Schwartz, Schwartz, Junell, Campbell and Oathout, Houston,TX, for Defendant.

### *ORDER DENYING SUMMARY JUDGMENT*

KENT, District Judge.

Plaintiff, a former captain of an ocean-going tug and barge unit, brings this wrongful discharge case under the public policy exception to the employment-at-will doctrine. Plaintiff was terminated on January 4, 1996, allegedly because he refused to sail in the face of two storms on two different occasions. Plaintiff filed suit in this Court on September 6, 1996. Now before the Court is Defendant's Motion for Summary Judgment of Oc-

tober 24, 1997. For the reasons that follow, Defendant's Motion is **DENIED**.

## I. FACTUAL SUMMARY

Plaintiff was hired by Defendant in December of 1985. Defendant, a subsidiary of Amoco Corporation, transports Amoco products from the Texas City–Galveston area across the Gulf of Mexico and through the Atlantic Ocean to Charleston, South Carolina, and to other destinations along the eastern coast of the United States. In January of 1994, Plaintiff became captain of the tug COLUMBIA BAY and its barge, the SOUTH CAROLINA BAY. Plaintiff's regular route required transportation of the toxic petrochemical, paraxylene, to South Carolina. As captain, Plaintiff was entirely responsible for the safety of the crew aboard the Columbia Bay. Moreover, according to Defendant's *U.S. Tug/Barge Fleet Policy Manual,* he was delegated the authority to make decisions concerning weather-related sailing. The *Manual* also provided that "[t]he objective of minimizing operating costs is not to be achieved to the detriment of safety."

In June of 1995, the COLUMBIA BAY left Charleston, South Carolina en route to Texas City, Texas. After clearing the Florida Keys, Plaintiff changed the course of the tug and eventually docked in Tampa, Florida due to reports from the National Weather Service of what eventually became Hurricane Allison. Defendant alleges that Plaintiff's actions were wrongful and delayed the COLUMBIA BAY's return to Texas, costing Defendant significant and unnecessary fuel and port charges. Plaintiff asserts that his decision to delay was based upon sound principles of seamanship.

On September 27, 1995, while anchored in Texas City, Plaintiff learned of a tropical depression developing off the eastern coast of the Yucatan Peninsula. That storm eventually became Hurricane Opal. In response to the weather reports, Plaintiff again delayed his departure until the storm cleared the Gulf of Mexico and did not sail until October 5, 1995. Again, Defendant contends that the delay resulted in unnecessary expense.

On December 14, 1995, Plaintiff's supervisor prepared a memo summarizing Plaintiff's job performance. In addition to the two storm delays, the memo also cited other "infractions," including a January 12, 1995 customer complaint concerning the COLUMBIA BAY's erratic arrival times, Plaintiff's unnecessary changing of his estimated arrival times, and the allegation that on at least one occasion, Plaintiff had purposely slowed the tug's arrival rather than update his arrival time. In the memo, Plaintiff was advised to set and maintain his estimated time of arrival or he would be asked to resign. Thereafter, at a January 4, 1996 meeting with Plaintiff, Defendant again alleged that Plaintiff had slowed his passage in order to meet his arrival time. Moreover, at that meeting, Defendant compared the total time for all weather-related delays for the COLUMBIA BAY in the year prior to Plaintiff becoming captain and the first ten months of Plaintiff's tenure. The analysis revealed that in the year prior to Plaintiff's tenure, the COLUMBIA BAY had 385.9 hours of weather delays, whereas, under Plaintiff's command, the COLUMBIA BAY had 861.8 hours of such delays. After discussing the analysis and the infractions contained in the memo with Plaintiff, Defendant asked for Plaintiff's resignation. Plaintiff refused and was immediately fired.

Plaintiff concedes that he was at all times an at-will employee. *See Findley v. Red Top Super Markets, Inc.,* 188 F.2d 834, 837 n. 1 (5th Cir.1951) (declaring that in the absence of a contractual provision providing otherwise, a seaman's employment is "terminable at will by either party"). He brings this wrongful discharge action claiming a public policy exception to the employment-at-will doctrine. Defendant has moved for summary judgment on three bases. First, Defendant argues that admiralty law controls this case and no exception to the at-will doctrine exists in admiralty on these facts. Second, Defendant argues that even if an exception exists, Plaintiff was never ordered to violate the law. Third, Defendant argues that even if an exception exists, Plaintiff was not terminated solely for his refusal to violate the law.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED. R. CIV. P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S. Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting FED. R. CIV. P. 56(e)).

## III. ANALYSIS

### A. Admiralty Law Controls.

 Although Plaintiff did not invoke this Court's admiralty jurisdiction in his Complaint, it is well established that maritime law applies in "those cases where the subject matter of the controversy bears the type of significant relationship to traditional maritime activities necessary to invoke admiralty jurisdiction." *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1231 (5th Cir.1985) (relying upon *Kossick v. United Fruit Co.,* 365 U.S. 731, 736–38, 81 S.Ct. 886, 890–92, 6 L.Ed.2d 56 (1961)); *see Watson on Behalf of Watson v. Massman Const. Co.,* 850 F.2d 219, 220–21 (5th Cir. 1988) (holding that admiralty jurisdiction applies to a tort dispute if either the injured party or the alleged tortfeasor is a traditional maritime actor or at least if either of those parties is performing a traditional maritime activity); *Hale v. Co–Mar Offshore Corp.,* 588 F.Supp. 1212, 1215 (W.D.La.1984) (holding that an agreement to transport people and supplies to and from an offshore drilling rig was an admiralty contract); *see generally Carlisle Packing Co. v. Sandanger,* 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922); *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Todd Shipyards Corp. v. Turbine Serv. Inc.,* 674 F.2d 401, 412 (5th Cir.1982) (declaring that admiralty principles govern contracts for vessel repair and conversion). "With admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986). Indeed, if a case falls under the

Court's admiralty jurisdiction, maritime law must be applied. *See e.g., id.; see also* U.S. CONST. art. III, § 2 ("The judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction."). Uniformity of application throughout the nation is the central purpose and feature of this exclusive jurisdiction. *See The Lottawanna (Rodd v. Heart)*, 88 U.S. (21 Wall.) 558, 575, 22 L.Ed 654 (1874). Thus, the choice-of-law question in this case hinges upon whether Plaintiff's employment bears a significant relationship to traditional maritime activities. The Court holds today that it does. Plaintiff worked as a captain of an ocean-going vessel. Most of his time spent on the job was spent at sea, as opposed to land. Plaintiff's duties required him to captain a tug, transferring cargo across the Gulf of Mexico and into the Atlantic Ocean. Because Plaintiff's job with Defendant directly affected maritime commerce, maritime law applies in this case.[1] *See Rex Oil, Ltd. v. M/V JACINTH*, 873 F.2d 82, 85 (5th Cir.1989) (declaring that admiralty jurisdiction exists over any dispute involving maritime contracts); *Laredo*, 754 F.2d at 1231–32 ("An agreement to transport people and supplies in a vessel to and from a well site on navigable waters is clearly a maritime contract."); *Smith v. Pan Air Corp.*, 684 F.2d 1102, 1111 (5th Cir.1982) (noting that "transporting person[s] over the seas is a maritime-type function").

■ Although admiralty law governs Plaintiff's cause of action, to the extent that it is not inconsistent with admiralty principles, Texas employment law may also be applicable to Plaintiff's wrongful discharge cause of action. *See Tungus v. Skovgaard*, 358 U.S. 588, 592, 79 S.Ct. 503, 506, 3 L.Ed.2d 524 (1959) ("The decisions of this Court long ago established that when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached."). Specifically, if the Court finds there is no established general maritime rule on this particular issue, and the subject does not require uniformity, this Court may look to Texas law. *See id.; Southern Pac. Co.*, 244 U.S. at 216, 37 S.Ct. at 529 (declaring that state law may be applied in admiralty cases unless it conflicts with federal law by prejudicing the "characteristic features" of federal maritime law, or interfering with the "proper harmony and uniformity of that law."); *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310, 323, 75 S.Ct. 368, 375, 99 L.Ed 337 (1955) (Frankfurter, J., concurring); *Ham Marine, Inc. v. Dresser Industries, Inc.*, 72 F.3d 454, 459 (5th Cir.1995); *Koninklyke Nederlandsche Stoomboot Maalschappy, N.V. v. Strachan Shipping Co.*, 301 F.2d 741, 743 (5th Cir.1962). However, because maritime law is superior, the Court must apply maritime law if it conflicts with Texas common law on this issue. *See Ham Marine*, 72 F.3d at 459. No Fifth Circuit case has directly addressed whether Texas' wrongful discharge laws conflict with admiralty law.[2]

*B. An Exception to the Employment–At–Will Doctrine Exists in Admiralty Law on These Facts.*

In its Motion for Summary Judgment, Defendant argues that maritime law does not recognize an exception to the employment-at-will doctrine for refusing to violate a safety statute. Defendant acknowledges that such an exception exists under Texas law, but contends that because maritime law applies, Texas law is preempted. In support of the proposition that no exception to the at-will doctrine exists in admiralty for refusing to

---

**1.** Plaintiff initially brought his case under the exception to the employment-at-will doctrine recognized in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985) (declaring that an at-will employee cannot be discharged solely for refusing to violate the law). The Court expressly notes, however, that in his Response to Defendant's Motion for Summary Judgment, Plaintiff argues citing admiralty authority, apparently abandoning his state law claim and relying instead on maritime principles.

**2.** The Court expressly notes that the Fifth Circuit has applied federal maritime law in at least two wrongful discharge cases. *See, e.g., Garrie v. Gray*, 912 F.2d 808, 812–13 (5th Cir.1990); *Feemster v. BJ–Titan Services Co.*, 873 F.2d 91, 93–94 (5th Cir.1989). Neither case addresses preemption of state wrongful discharge claims.

violate a safety statute, Defendant cites *Feemster v. BJ–Titan Services Co.,* 873 F.2d 91, 93–94 (5th Cir.1990).[3] In *Feemster,* a tug-boat captain was instructed by management to push a barge from Venice, Louisiana to Lake Pagie, Louisiana, an eighteen hour trip. *See id.* at 92. The captain refused, and was subsequently fired. In his suit against his employer, the captain contended that making the trip, without stopping, would cause him to violate 46 U.S.C. § 8104(h), which prohibits an individual from operating a vessel for more than twelve hours in a consecutive twenty-four hour period. *See id.* On appeal, after the trial court granted summary judgment, the Fifth Circuit affirmed the trial court, stating: "After thorough consideration of the facts and circumstances of the case, we have concluded that an exception to the employment-at-will doctrine is not warranted ..." *Id.* at 93–94.

■ The Court agrees that *Feemster* controls this case. However, this Court does not read *Feemster* as meaning that the Fifth Circuit will *never* recognize an exception to the employment-at-will doctrine based on a seaman's refusal to violate a safety statute. Defendant apparently misunderstands *Feemster*'s holding. In order to fully understand *Feemster,* it must be viewed in light of the Fifth Circuit's holding in *Smith v. Atlas Off–Shore Boat Service, Inc.,* 653 F.2d 1057 (5th Cir.1981). In *Smith,* the Fifth Circuit acknowledged the stringency of the employment-at-will doctrine, but recognized that an exception to this doctrine exists when the employee's termination violates *clearly important public policy. See id.* at 1063 ("The maritime employer may discharge the seaman for good cause, for no cause, or even, in most circumstances, for a morally reprehensible cause. We conclude, however, that a discharge in retaliation for the seaman's exercise of his legal right to file a personal injury action against the employer constitutes a maritime tort."). Thus, reading *Feemster* in light of *Smith,* the primary inquiry is whether public policy considerations in particular factual circumstances are suffi-

cient to override the at-will doctrine. Simply stated, *clearly important public policy* concerns were not at issue in *Feemster.* Such concerns were at issue in *Smith,* and such concerns are at issue here.

C. *The Public Policy Implicated in this Case Is More Akin to Smith than Feemster.*

■ In *Smith,* public policy considerations required an exception to the at-will doctrine when an employee was fired for filing a Jones Act claim. *See id.* at 1065. ("Whether grounded in tort or contract, the cause of action is based on the notion that the employer's conduct in discharging the employee constitutes an abuse of the employer's absolute right to terminate the employment relationship when the employer utilizes that right to contravene an established public policy."). In *Feemster,* however, the public policy considerations were relatively weak. The safety statute at issue in *Feemster,* § 8104, concerns overtime labor. *See Feemster,* 873 F.2d at 93 (considering § 8104, which provides, "[o]n a [towing vessel of 26 feet or longer, such as the one at issue in *Feemster* ] an individual licensed to operate a towing vessel may not work for more than 12 hours in a consecutive 24–hour period except in an emergency."). It is aimed only at employers and provides only a small fine for violations. *See Meaige v. Hartley Marine Corp.,* 925 F.2d 700, 702 (4th Cir.1991). Moreover, § 8104 provides that the captain can require his crew to work in violation of the statute, if such work is necessary for the safety of the vessel. *See* 46 *U.S.C.* § 8104(f). Thus, the statute at issue in *Feemster* demonstrates that the orders of the captain regarding the safety of his vessel are paramount. Moreover, a careful reading of § 8104 reveals that maritime safety, the inalienable responsibility of the captain, is of utmost importance.

The public policy implicated in the case at bar is much stronger than that in *Feemster.* Prior to the two storm delays, two leaks were found in COLUMBIA BAY. In his Complaint, Plaintiff contends that because of the

**3.** Defendant also relies on *Garrie v. James L. Gray, Inc.,* 912 F.2d 808 (5th Cir.1990), which held similar to *Feemster* on similar facts.

repaired condition of the tug, and because of the reported storms near or in his path, he refused to sail, fearing for the safety of his crew and fearing that sailing would result in the spilling of the toxic chemical paraxylene. Paraxylene is classified by the Coast Guard as extremely toxic and harmful to aquatic life, even in very low concentrations. Moreover, paraxylene is extremely harmful to humans and fouling to shorelines. Because of its harmful nature to both wildlife and humans, and its difficulty to clean up, paraxylene requires a high degree of caution in transport. At the time of the second delay, Plaintiff's cargo included 52,000,000 pounds of paraxylene.

In addition to fears about his crew's safety and his pollution concerns, Plaintiff further asserts that had he sailed the tug in its condition at the time of the impending storms, he would have been in violation of 46 U.S.C. § 10908, which prohibits sending an unseaworthy vessel to sea that will endanger the life of an individual. Seaworthiness is a relative term that considers the voyage undertaken and the cargo to be carried. The perils of the anticipated voyage are also considered when making the unseaworthy determination. *See Spencer Kellogg & Sons v. Buckeye S.S. Co.*, 70 F.2d 146, 148 (6th Cir. 1934) (citing *The Silvia,* 171 U.S. 462, 464, 19 S.Ct. 7, 8, 43 L.Ed. 241 (1898)). The Court finds the statute at issue in this case to be very different from the one at issue in *Feemster.* Section 10908 is directed at *any* seaman and imposes a $1000 fine, five years imprisonment, or both. *See* 46 U.S.C. § 10908. Like in *Smith,* the public policy implications in this case are strong indeed. In fact, it could be persuasively argued that the public policy considerations involved in this case are even stronger than those in the *Smith* case; that is, the public interest in preventing a captain from taking out a vessel in what he reasonably believes to be an unseaworthy condition is stronger than the interest involved when an employee is termi-

nated for filing a Jones Act claim, especially when that vessel believed to be unseaworthy is loaded with extremely toxic chemicals and is carrying a full crew. Indeed, the public policy at issue here is so strong that § 10908 makes it a felony to send to sea a vessel in an unseaworthy state when lives are at stake. *Feemster* itself recognized the public policy exception, but found it nonapplicable in that case. *See Feemster,* 873 F.2d at 93 ("In the first place, public policy considerations are not so clearly implicated in this case as they were in *Smith.*").[4] Plaintiff's arguments are persuasive. The Court today recognizes a strong public policy in protecting the safety of not only seamen, but the public as well, and the sanctity of our coastlines. These considerations, coupled with the public policy implications surrounding § 10908, are sufficient to overcome the at-will presumption. Thus, the public policy exception is clearly applicable in this case.

Assuming for the moment that Plaintiff can prove his case, the Court finds that allowing an employer to fire a captain at will for refusing to violate the law by sailing a vessel into a storm carrying a crew and extremely toxic chemicals would create an incentive for the captain to risk human life and our coastline in order to retain his employment. This is flatly unacceptable. Plaintiff was made a captain to exercise his judgment. He received glowing evaluations prior to the incidents in question. Defendant's policies provided that the captain of a tug was entirely responsible for the safety of the crew on that tug; he was responsible for deciding whether sailing was prudent.[5] Given the strong public policy at issue, it is appropriate for the Court to acknowledge a wrongful termination cause of action in favor of a captain terminated for refusing to pilot a vessel that the captain reasonably believes is unseaworthy under the circumstances, thereby posing an undue risk of death or serious injury to the crew, and the danger of a toxic

---

4. Plaintiff cites provisions from the Texas Criminal Code, Texas Water Code, Ports and Waterways Safety Act, and the Federal Water Pollution Control Act.

5. Defendant provides to its employees a booklet entitled "We Must Obey the Law. Period." In that booklet, Defendant states, "Recent legislation has added and toughened criminal penalties for some illegal marine operations, particularly those involving pollution."

spill.[6] *See Seymore v. Lake Tahoe Cruises, Inc.*, 888 F.Supp. 1029, 1035 (E.D.Cal.1995) (recognizing the public policy exception to the employment-at-will doctrine where a captain refused to sail because he believed that to do so would endanger the passengers); *Baiton v. Carnival Cruise Lines, Inc.*, 661 So.2d 313, 316 (Fla.Dist.Ct.App.1995) (recognizing an exception to the at-will doctrine when a seaman is discharged for refusing to testify falsely); *but see Meaige*, 925 F.2d at 702 (holding that refusal to violate § 10908 did not sufficiently implicate public policy to overcome the at-will doctrine).

### D. Fact Issues Exist Precluding Summary Judgment.

■ Plaintiff brings this case contending that he was terminated for refusing to violate federal law. Defendant argues that even if the Court recognizes such a cause of action, summary judgment is still proper because Plaintiff can provide no evidence that there was a clear requirement by management that he violate the law. *See Feemster*, 873 F.2d at 94 (acknowledging that even if a private cause of action were recognized for refusing to violate a safety statute, there could be no viable claim without a "clear requirement by management" that the employee violate the law). To the contrary, Plaintiff offers admissible evidence that Defendant personnel instructed Plaintiff's supervisor that he wanted Plaintiff to sail "now." Moreover, in Plaintiff's deposition, Plaintiff states that the supervisor told him, "I may be ordered to sail you out, to tell you to sail out of here. . . . I may be ordered to sail you out of here . . .

Chicago told me that if my captains are too conservative, to fire them." Plaintiff asserts that he responded, "No prudent mariner would sail this type of rig towards a storm that's threatening his path." The Court finds this quoted language in and of itself sufficient to create a fact issue regarding whether Plaintiff was clearly required to sail in the face of inclement weather. A reasonable jury could so find. See *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.[7] Defendant also argues that Plaintiff cannot prove that the sole reason for his discharge was his refusal to violate the law. Again, the summary judgment evidence in this case is sufficient to create a fact question on this issue.

### E. Elements of Plaintiff's Cause of Action.

■ Because Plaintiff's cause of action is one not previously recognized in the Fifth Circuit, the Court is obligated to establish parameters. As discussed above, the Court may look to Texas law in admiralty matters when that law does not conflict with maritime law. In the present case, the Court finds Texas and admiralty law consistent on this issue. The Texas Supreme Court in *Sabine Pilot* recognized an exception to the at-will doctrine when an employee is terminated *solely* for refusing to violate the law upon order from management. *See Sabine Pilot*, 687 S.W.2d at 734. Similarly, under admiralty law, an exception to the at-will doctrine exists when strong public policy considerations are involved. *Cf. Smith*, 653 F.2d at 1063. After a careful reading of both the *Smith* and *Sabine Pilot* opinions, this Court concludes that the rationale behind both

6. Such a cause of action is similar to those recognized under the Occupational Safety and Health Act, and the Federal Mine Safety and Health Act, which allow employees to refuse to perform work they reasonably believe is unsafe. *See Whirlpool Corp. v. Marshall*, 445 U.S. 1, 3, 100 S.Ct. 883, 886, 63 L.Ed.2d 154 (1980); *Gilbert v. Federal Mine Safety & Health Rev. Comm'n*, 866 F.2d 1433, 1439 (D.C.Cir.1989).

7. Defendant argues that there can be no clear requirement because it is wholly speculative whether § 10908 would have been violated. Defendant relies on *Feemster*, wherein the Fifth Circuit stated that it was speculative whether the captain would have violated the twelve hour requirement because he never embarked on his journey and there was no violation of the law.

*Feemster*, 873 F.2d at 94. Using Defendant's reasoning, rather than using his judgment based on training and experience, Plaintiff would be required to sail upon order of management; only if the storm actually crossed Plaintiff's bow would he be given leave to refuse to sail further under Defendant's logic. Applied to the present facts, Defendant's argument is absolutely ludicrous. In the supporting documentation submitted, it is clear that Defendant's policies emphasized and relied upon the judgment of the individual captain. If Plaintiff fails to prove his actions and beliefs were unreasonable, Defendant will prevail. However, it is entirely unfair to "Monday morning quarterback" Plaintiff's decisions based only on hindsight and the eventual path of the two storms.

opinions is to prohibit employers from exerting economic pressure on their employees to perform acts contrary to strong public policy. At least one other District Court agrees with this reading. *See Tate v. Overseas Bulktank Corp.*, 617 F.Supp. 1075, 1077 (E.D.Tex. 1985), *aff'd,* 786 F.2d 1160 (5th Cir.1986).

Because Texas law on this issue is consistent, and because there is no contrary authority, the Court borrows the wrongful discharge elements from *Sabine Pilot* and its progeny. *See Sabine Pilot,* 687 S.W.2d at 735 ("We further hold that in the trial of such a case it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for no reason other than his

refusal to perform an illegal act.").[8] Therefore, Plaintiff can prevail at trial if he can prove: 1) that he refused to sail because he reasonably believed that to do so would be in violation of § 10908;[9] 2) that he was given a clear directive to violate the law;[10] and 3) that he was fired solely because of his refusal to do so.[11] The Court finds that fact issues exist on these matters which preclude summary judgment in this case. Clearly, whether Plaintiff's actions fall within the narrow exception recognized today is a question for the trier of fact. Therefore, Defendant's Motion for Summary Judgment must be denied.

For the above reasons, Defendant's Motion for Summary Judgment is hereby **DENIED**.

**8.** The Court here adopts the "sole cause" requirement. In *Smith* the Fifth Circuit looked to the controlling law to determine what quantum of causation was required to prove a retaliatory discharge claim, stating:

In order to prevail on the retaliatory discharge claim, the seaman must affirmatively establish that the employer's decision was motivated in substantial part by the knowledge that the seaman either intends to file, or has already filed, a personal injury action against the employer. The employer may, on the other hand, defeat the seaman's action by demonstrating that the personal injury action was not a substantial motivating factor for the discharge.

*Smith,* 653 F.2d at 1064 & n. 20. Here, the analogous state law imposes the stringent "sole cause" requirement. *See Guthrie v. Tifco,* 941 F.2d 374, 379 (5th Cir.1991) (noting that the Sabine Pilot exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act); *Sabine Pilot,* 687 S.W.2d at 735.

**9.** *Sabine Pilot* requires the Court to make the threshold determination as a matter of law whether the act Plaintiff refused to commit was illegal. Because the public policy at issue here involves risks to human life, and because the captain of a vessel is traditionally responsible for making determinations regarding his vessel's integrity, it is appropriate to apply a "reasonable belief" standard to the captain's determination of seaworthiness. *See Seymore,* 888 F.Supp. at 1035 n. 15.

In *Hancock v. Express One International, Inc.,* 800 S.W.2d 634, 636–37 (Tex.App.—Dallas 1990, writ denied), the court refused to extend the *Sabine Pilot* exception to illegal acts that carry only civil penalties. Today's holding is consistent with *Hancock* and *Feemster.* In *Feemster,* where the Fifth Circuit disallowed the exception, and in *Hancock,* where Texas appellate court refused to recognize the exception, the statutes at issue carried only civil penalties. The statute at

issue in the present case carries criminal penalties.

**10.** In *Burt v. City of Burkburnett,* 800 S.W.2d 625, 627 (Tex.App.—Fort Worth 1990, writ denied), the court interpreted *Sabine Pilot's* use of the word *refused* to include a requirement that the employer, in some manner, must order, require, or request the employee to commit an illegal act. The Court finds the reasoning in *Burt* persuasive.

**11.** The Texas Pattern Jury Charge on this issue asks: "Was [Plaintiff] discharged for the sole reason that he refused to perform an illegal act?" The Court today grafts a reasonable belief standard onto the standard *Sabine Pilot* jury question. Thus, the above question becomes question two and question one is: "Did [Plaintiff] reasonably believe that by sailing on [pertinent dates] that he would be in violation of [pertinent statutes]?"

The Court need not yet address the issue of damages. The Court notes that in *Sabine Pilot* it was opined, but not held, that damages should include loss of wages, both past and those reasonably anticipated in the future, employee retirement benefits that would have accrued had employment continued, and punitive damages. *See Sabine Pilot,* 687 S.W.2d at 736 (Kilgarlin, J., concurring). In *Smith,* the Court held that terminating a seaman for filing a Jones Act claim was an intentional tort, entitling the seaman to compensatory damages caused by the abusive firing, including the seaman's expenses of finding new employment, lost earnings while the seaman seeks another position, and lost future earnings if the seaman's new job provides less remuneration than that earned while the seaman was in the employ of the defendant; in addition to these economic losses, *Smith* opined that the discharged seaman may be entitled to recover compensatory damages for mental anguish suffered as a result of the wrongful discharge. *See Smith,* 653 F.2d at 1064.

The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**