Michael Massengale, Justice
This appeal presents the question of whether a common-law whistleblower claim should be recognized under general maritime law. Appellant Cameron Haag alleges that he was wrongfully discharged in retaliation for warning his employer that a vessel could not be operated safely with the proposed offshore seismic-surveying equipment. A subsequent accident involving the vessel resulted in one crewman's death and injuries to six others. Afterwards Haag told investigators that he had communicated his concerns over the use of the surveying equipment. Over two years after the accident investigation, Haag was terminated.
Haag's employer successfully obtained a summary judgment rejecting his wrongful-discharge claims. On appeal, Haag contends that he pleaded a recognized cause of action under maritime law and that he raised a genuine issue of material fact that the alleged retaliation was motivated in substantial part by his report about his concerns. On the particular facts of this case, in which Congress has enacted maritime whistleblower protections that do not apply to Haag's circumstances, we conclude that his allegations do not state a claim under the limited exceptions to the at-will employment doctrine. Accordingly, we affirm.
Background
For purposes of this appeal from a summary judgment, we assume the truth of the plaintiff's allegations. Appellant Cameron Haag worked for appellees Schlumberger Technology Corporation and WesternGeco, L.L.C. (collectively, "Schlumberger") for about 20 years. Nine years before his termination, Haag was promoted to party manager. In that position, he worked with seismic streamers aboard Schlumberger's vessels, and he routinely had access to accident reports for the vessels where he worked.
Schlumberger uses streamer spreads to perform offshore seismic surveys for oil-and-gas companies, which use the information to explore geological features beneath the sea. To perform the survey, a vessel tows cables equipped with sensors that detect pressure fluctuations in the water caused by reflected sound waves. The sensor-equipped cables are the streamers. Generally, the number of streamers a vessel tows is directly proportional to the amount of seismic information it collects.
*223 Haag alleges that he warned Schlumberger that the WG Tasman should not tow 12-streamer spreads because it could not handle that number of streamers. Nevertheless, despite Haag's warnings, Schlumberger directed that the vessel tow 12-streamer spreads. The WG Tasman later had an accident off the coast of Uruguay. The accident left one crewman dead and six others injured.
Schlumberger interviewed Haag after the accident, and he said that he felt uncomfortable towing the 12-streamer spread. Haag also told a Schlumberger executive that he previously had told "his superiors of the risk of casualties associated with the 12-streamer spread." At the executive's request, Haag wrote an email detailing his pre-accident warnings. Haag alleges that Schlumberger personnel privately recognized that the WG Tasman "had been towing a spread beyond its capabilities."
After the accident and later that same year, Haag received his lowest-ever performance evaluation from Schlumberger. Though he always had been granted a performance-evaluation interview, and despite his request for one, Schlumberger denied him an interview. Haag requested a copy of the accident report, but he never was allowed to see it.
Haag then went on the first of two disability leaves. When he returned, his human resources representative told him that his manager had requested that he resume his position as a party manager on a streamer vessel. However, Schlumberger assigned Haag to a manager position on a source vessel, which he alleges was a demotion.
Subsequently, Haag went on the second disability leave. Soon after he returned, Schlumberger terminated his employment. Around the same time, Schlumberger terminated other employees, including other party managers, as part of a company-wide reduction in force. Haag alleges that Schlumberger retained other party managers "with less experience and/or lower performance evaluations." He alleges that the poor performance evaluation, the denial of a performance-evaluation interview, the denial of access to the accident report, the demotion, and the termination were all in retaliation for his reports to Schlumberger, both before and after the accident, that he was concerned about the use of the 12-streamer spread.
Haag initiated a whistleblower complaint with the Occupational Safety and Health Administration, which administers complaints under the Seaman's Protection Act, 46 U.S.C. § 2114. OSHA dismissed the complaint because it did not have "reasonable cause to believe" a violation of the Seaman's Protection Act occurred.
Haag then filed his original petition in Harris County District Court, alleging only one cause of action for wrongful discharge. Schlumberger moved for both no-evidence and traditional summary judgment. The trial court granted summary judgment without specifying a reason. Haag then appealed.
Analysis
Haag invokes the general maritime law to support his claim, and Schlumberger does not contest its applicability. State courts may hear in personam suits alleging causes of action under maritime law. See 28 U.S.C. § 1333(1) ; Madruga v. Super. Ct. of State of Cal. ex rel. San Diego Cty. , 346 U.S. 556, 560-61, 74 S.Ct. 298, 98 L.Ed. 290 (1954) ; Texaco Ref. & Mktg., Inc. v. Estate of Dau Van Tran , 808 S.W.2d 61, 64 (Tex. 1991). "When a state court hears an admiralty case, that court occupies essentially the same position occupied by a federal court sitting in diversity:
*224 the state court must apply substantive federal maritime law but follow state procedure." Mar. Overseas Corp. v. Ellis , 971 S.W.2d 402, 406 (Tex. 1998).
We review summary judgments de novo. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009). When the trial court does not specify the grounds on which it granted a summary judgment, we must affirm if any of the grounds properly presented supports the summary judgment. See Merriman v. XTO Energy, Inc. , 407 S.W.3d 244, 248 (Tex. 2013).
A defendant may establish its right to summary judgment by demonstrating that the law does not recognize the cause of action pleaded by the plaintiff. See Taylor v. Allstate Ins. Co. , 356 S.W.3d 92, 96 (Tex. App.-Houston [1st Dist.] 2011, pet. denied). In such an instance, the movant meets its summary-judgment burden not by proving or disproving facts, but by showing that the plaintiff has not pleaded a viable cause of action. Id. To determine whether a cause of action exists under the circumstances, we construe the pleading broadly and assume the facts as pleaded are true. Id.
Absent an employment contract or applicable collective-bargaining agreement, a seaman's employment is generally "terminable at will by either party." See Smith v. Atlas Off-Shore Boat Serv., Inc. , 653 F.2d 1057, 1060 (5th Cir. Unit A 1981). The seaman's employer may "discharge the seaman for good cause, for no cause, or even, in most circumstances, for a morally reprehensible cause." Id. at 1063. In Smith , the Fifth Circuit recognized a "limited" exception to the at-will doctrine by recognizing a cause of action under federal maritime law for retaliation against a seaman for maintaining a Jones Act personal-injury claim against his employer. See id. at 1064-65. The cause of action "subjects the employer to liability for compensatory damages if, and only if, the seaman can establish that a substantial motivating factor in the employer's decision to discharge him was the seaman's personal injury action arising out of the employment relation." Id. at 1065.
Applying Smith , the Fifth Circuit in Feemster v. BJ-Titan Servs. Co. , 873 F.2d 91 (5th Cir. 1989), acknowledged that "[s]ome courts have recognized exceptions based on public policy considerations that can, under certain circumstances, override the employment-at-will doctrine." 873 F.2d at 93. Feemster observed that the categories of potential public-policy exceptions to permit a wrongful-discharge claim despite the default rule of at-will employment include: "(1) refusal to commit an unlawful act, (2) performance of an important public obligation, or (3) exercise of a statutory right or privilege." Id. (citing Note, Protecting Employees at Will Against Wrongful Discharge: The Public Policy Exception , 96 HARV. L. REV. 1931, 1936-37 (1983) ). While Smith involved the third exception (filing a lawsuit authorized by the Jones Act), Feemster involved the first exception (refusal to carry out an assignment that would violate a federal safety statute).
The Fifth Circuit held that Feemster failed to allege a cause of action, noting that " Smith should not be broadened to apply" to permit a wrongful-discharge claim based on the employee's refusal to embark on an 18-hour nonstop tugboat run when federal law generally restricted operation of the vessel to 12 hours in a 24-hour period (see 46 U.S.C. § 8104(h) ). Feemster , 873 F.2d at 92, 93-94. The court gave four distinct reasons to explain its holding. First, it explained that public-policy considerations were implicated less by Feemster's case than they had been in Smith , because the statute upon which Feemster *225 relied provided him with "no personal right to refuse a management directive with which he disagreed, even if it violated a safety statute." Id. at 93. Second, the court declared it would be "inappropriate ... to engraft" upon the relevant federal statute "an additional provision granting a private cause of action." Id. "To do so would create new rights and duties when Congress, in enacting the statutes on which Feemster relies, clearly chose not to do so." Id. Third, the court noted that Feemster's position would have been stronger had he made a report to the Coast Guard, which is the enforcement role for seamen that Congress endorsed in the statute. Id. at 93-94. Finally, the court explained that Feemster's "discharge arose in the absence of a clear requirement by management that Feemster violate the statute," and in fact the statute had not been violated. Id. at 94.
Haag's claim does not neatly fit the pattern of Smith or Feemster . Haag does not claim that he was asked to perform, or that he refused to perform, an unlawful act. He does not claim retaliation in response to exercising a statutory right. Instead he attempts to mirror the claim recognized in Smith for retaliation against a seaman exercising a remedy provided under the Jones Act. Yet Haag's pleading in the trial court, his summary-judgment response, and his briefing in this court do not identify any federal statute or regulation, other than the Seaman's Protection Act, upon which he relies for his claims. Instead, Haag expressly seeks to invoke a maritime common-law claim for whistleblower retaliation, which is a subject of the Seaman's Protection Act.
Haag argues that the Act's whistleblower protections are designed to encourage seamen "to report dangerous conditions through protected channels by ensuring they are safe from the threat of retaliation by their employer." But reference to the actual text of the Act demonstrates its inapplicability to these facts. The Act prohibits discharge of a seaman for reporting "to the Coast Guard or other appropriate Federal agency or department that the seaman believes that a violation of a maritime safety law or regulation prescribed under that law or regulation has occurred." 46 U.S.C. § 2114(a)(1)(A). Haag does not allege that he ever made a report to the Coast Guard or any other federal agency or department, or that he was terminated because he was about to do so. See itation index="27" url="https://cite.case.law/citations/?q=46%20U.S.C.%20%C2%A7%202114">id. Moreover, while he contends that he reported use of a 12-streamer spread on the WG Tasman would be unsafe, and he repeated that warning after an accident occurred, Haag identifies no "maritime safety law or regulation prescribed under that law" that he contends was violated by use of the 12-steamer spread. None of the other circumstances protected under the Act apply to Haag's circumstances. See 46 U.S.C. § 2114(a)(1)(B)-(G).
At oral argument, Haag suggested that the internal reports to Schlumberger concerned vessel unseaworthiness, but he has not identified any statute or regulation upon which he based reports of unseaworthiness. Haag's references to unseaworthiness in the briefing are limited to describing an opinion from a federal district court that analyzed Smith -he does not argue that a statute or regulation governing seaworthiness is the basis for his claim. See TEX. R. APP. P. 38.1(i).
Haag seeks recognition of a maritime common-law cause of action in a circumstance where the most relevant federal legislation provides no private right of action. When Congress enacts protections for seamen, a court applying maritime law must respect the limits of the statutory remedy. The U.S. Supreme Court explained the role of a court applying maritime *226 law in Miles v. Apex Marine Corp. , 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The Court held that the cause of action under general maritime law for a seaman's wrongful death does not allow for loss-of-society damages or for the seaman's survivor to recover the seaman's lost future earnings. 498 U.S. at 37, 111 S.Ct. 317. The Court reached this conclusion to align the wrongful-death remedy under general maritime law with the related wrongful-death remedies under the Jones Act and the Death on the High Seas Act. The Court distinguished the present era from earlier jurisprudence when Congress had not yet legislated extensively to protect seamen from injury. Id. at 27, 111 S.Ct. 317. In the earlier era, seamen had to look to courts for protection, but now statutes accomplish that goal. Id. Given the complementary, but different, roles of the legislative and judicial branches, "an admiralty court should look primarily to these legislative enactments for policy guidance" and "keep strictly within the limits imposed by Congress" because it "retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." Id.
When maritime legislation directly addresses a substantive area of law, the courts may not "supplement" the legislation into meaninglessness. Id. at 31, 111 S.Ct. 317. Faced with a claim under general maritime law in an area covered by a statute, courts should not "prescribe a different measure of damages," nor should they "prescribe a different statute of limitations, or a different class of beneficiaries." Id. (quoting Mobil Oil Corp. v. Higginbotham , 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) ). The courts instead should respect the limits that Congress imposed.
As in Feemster , public-policy considerations are not so clearly implicated in this case as in Smith because the Seaman's Protection Act does not give Haag a private cause of action. As in Feemster , recognizing a common-law cause of action in this case effectively would engraft additional provisions to cover expanded circumstances and create new rights and duties that Congress did not enact. See 873 F.2d at 93. The Seaman's Protection Act promotes maritime safety by protecting reports to the Coast Guard as the agent of enforcement, not by empowering employees to act as private enforcers. See ids="10526606" index="45" url="https://cite.case.law/f2d/873/91/">id. As in Feemster , denial of a common-law cause of action in this circumstance does not deprive an individual seaman of a voice in the enforcement scheme because Haag could have complained to the Coast Guard. See ids="10526606" index="46" url="https://cite.case.law/f2d/873/91/">id. at 93-94 ; accord Garrie v. James L. Gray, Inc. , 912 F.2d 808, 812-13 (5th Cir. 1990). And as in Feemster , the argument to apply a public-policy exception to the default rule of at-will employment to permit his suit is weak because Schlumberger did not terminate him for engaging in activity expressly authorized and protected by a statute. See 873 F.2d at 93-94.
Haag relies on Robinson v. Alter Barge Line, Inc. , 513 F.3d 668 (7th Cir. 2008), for the proposition that "nothing in the text or the legislative history of the Seaman's Protection Act suggests that Congress sought to provide the exclusive remedy for retaliatory discharge claims brought by seamen." But Robinson is of no help because the Seventh Circuit in that case rejected claims under federal maritime law for some of the same reasons that compel our conclusion in this case. First, the Seventh Circuit explained that the plaintiff had no claim under the Seaman's Protection Act. See Robinson , 513 F.3d at 670-71. Second, the court explained that it would not recognize a tort under general maritime law, and it noted both that the U.S. Supreme *227 Court had not yet confirmed the tort and that there was "opposition" to recognizing the tort as expressed in Garrie and Feemster . See ids="3165716" index="51" url="https://cite.case.law/f3d/513/668/">id. at 674-75.
The Seaman's Protection Act expresses the will of Congress about the protection of seaman whistleblowers. We will not eviscerate the boundaries of the cause of action provided under that Act by a judicial expansion of seaman-whistleblower protection to a different class of beneficiaries than the class that Congress chose to protect. See Miles , 498 U.S. at 31, 111 S.Ct. 317. Summary judgment was properly granted because Haag did not plead a cognizable cause of action.
Conclusion
Our conclusion that Haag failed to plead a cognizable claim for retaliatory discharge justifies a grant of summary judgment, and is dispositive of this appeal. We need not address the other arguments raised by Haag. See TEX. R. APP. P. 47.1. The district court's judgment is affirmed.